Thomas v. The State.

No. 12,406.

## THOMAS v. THE STATE.

CRIMINAL LAW.—*Sending Obscene Letter.*—"*Paper*" *Includes Letter.*—The word "paper," as used in section 1997, R. S. 1881, prescribing the offence of sending lewd and obscene matter by mail, or otherwise, includes letters.

SAME.—*Affidavit and Information.*—*Setting Out Letter.*—*Omission of Part.*—An affidavit and information charging the sending of a lewd and obscene letter is not bad because, in setting out the letter, a few words are omitted, if the omission is explained by alleging that the words were illegible.

SAME.—*Copying Paper in Hæc Verba.*—*Quære*, whether, under section 1751, R. S. 1881, it is necessary in a prosecution of this character to set out the obscene paper *in hæc verba?*

SAME.—*Evidence.*—*Handwriting.*—In the absence of direct evidence of the sending of the letter, proof that it and the address upon the envelope are in the handwriting of the accused is proper.

SAME.—*Knowledge of Handwriting by Correspondence.*—*Production of Letters.*— One, by correspondence with another, may become so well acquainted with the latter's handwriting as to be competent to testify as to the genuineness of a writing claimed to be his; and to show the qualification of such witness the letters received by him in the course of the correspondence may be produced and identified.

SAME.—*Corroborative Evidence.*—As corroborative of such witness the genuineness of the signature to a letter received by him in such correspondence may be testified to by another.

SAME.—*Refreshing Memory of Handwriting by Reference to Other Papers.*—A witness who is shown to be acquainted with another's handwriting may, before or at the trial, refer to papers in his possession which he knows to be in the handwriting of the other, to refresh his memory before testifying.

SAME.—*Guilty Knowledge.*—For the purpose of showing guilty knowledge on the part of the accused, another letter of similar character, shown to be in his handwriting, received by the same person in like manner, is competent evidence.

SAME.—*Harmless Variance.*—*Practice.*—Immaterial and harmless variances between the original letter as read in evidence, and the copy set out in the affidavit and information, are not, in a case of this kind, available for the reversal of the judgment.

SAME.—*Defendant as Witness.*—*Cross-Examination.*—Where the defendant goes upon the stand as a witness in his own behalf, and denies the offence charged against him, he may be cross-examined upon all facts relevant and material to that issue.

SAME.—*Expert Witness.*—*Comparison of Handwriting.*— *Testing Accuracy of*

Thomas v. The State.

*Expert.*— To test the accuracy of an expert witness, who gives an opinion as to handwriting upon a comparison of a genuine with the disputed writing, he may be asked on cross-examination whether the latter and another writing not admitted to be genuine are in the same handwriting.

From the Fayette Circuit Court.

*T. D. Evans* and *D. W. McKee,* for appellant.

*F. T. Hord,* Attorney General, *L. H. Stanford,* Prosecuting Attorney, and *W. B. Hord,* for the State.

ZÖLLARS, J.—Section 1997, R. S. 1881, is as follows: " Whoever deposits in any post-office in this State, or places in charge of any person to be carried or conveyed, any lewd, obscene, indecent, or lascivious book, paper, pamphlet, drawing, lithograph, engraving, picture, daguerreotype, photograph, stereoscopic picture, model, cast, instrument or article of indecent or immoral use, or instrument or article for procuring abortion or for self-pollution, or medicine for procuring abortion or preventing conception, or any circular, hand-bill, card, advertisement, book, pamphlet, or notice of any kind; or gives oral information, stating when, where, how, or of whom such articles or things or any of them can be purchased or otherwise obtained; or knowingly receives the same or any of them, with intent to carry or convey the same; or knowingly carries or conveys the same, except in the United States mail,—shall be fined not more than five hundred dollars nor less than five dollars, to which may be added imprisonment in the county jail not more than six months nor less than ten days."

Upon an affidavit and information, charging appellant with having violated this statute, in sending a lewd and obscene letter to a young girl, he was convicted and fined $5. From this judgment he prosecutes this appeal.

Under proper motions below, and assignment of errors here, appellant assails the affidavit and information. The first contention is, that the mailing and sending of a letter, however lewd and obscene it may be, do not fall within the

Thomas *v.* The State.

terms of the above statute, and that hence the affidavit and information do not charge an offence known to the law. The ground of this contention is, that the word *paper* is the only word in the statute upon which any plausible argument to the contrary might be predicated, and that, under the well settled canons of construction, as applicable to criminal statutes, that word can not be made to include letters from one person to another.

It is undoubtedly the rule that criminal statutes should receive a strict construction, but it is also the rule, as stated by Judge DRUMMOND in the case of *United States* v. *Gaylord,* 17 Fed. Rep. 438, that it must be a reasonable construction, in reaching which must be considered the object the Legislature had in view in the words used. The plain and manifest object of the Legislature in the enactment of the above section, and the sections of the statute preceding and following, was to guard and protect the public morals, by erecting barriers which the evil-minded, lewd, and lascivious may not safely pass.

The moral worth of every community rests with the family. It is the source from which comes the ever-flowing current that brings with it lessons of probity and chastity. With that fountain head corrupted, decay and overthrow will surely follow. It is there that the youth are taught that honesty and virtue are above price. It is there that the young girls, in the innocence and purity of their youth, are nurtured and guarded against the wiles and intrigues of the wicked and the seducer. If they may be approached and insulted upon the streets with impunity by the vile and depraved, or if the same class may, with impunity, override the barrier that protects the home, and reach the young girls sheltered there, through the public mails, by letters sent to them, which teach or attempt to teach them that voluptuousness is more to be desired than true womanhood, and that virtue had better be exchanged for sexual dissipation, then, indeed, there is a crying necessity for further legislation. We

should be loath to come to the conclusion that the laws are thus defective. It is our duty, however, not to make, but to declare the statute law as we receive it from the hands of the Legislature. And did we feel that there is reasonable ground for doubt as to whether the above statute covers the offence here charged, we should do our duty and solve that doubt in favor of the accused.

After a careful examination and consideration, we are convinced that the word " paper," as used in the statute, was intended to, and by a fair construction does, cover a case like this. To give to the word "paper" its primary signification would be to destroy it, so far as concerns this statute. Primarily, the word " paper" means a substance used for writing and printing on.

Such a substance, of course, could neither be lewd, obscene, lascivious nor indecent. The word as used in the statute has reference, not to the material, but to what may be upon it. Shall it be said, then, that the matter upon the paper must be printed matter, or that the paper must be what is commonly known as a newspaper, or an illustrated paper? The statute gives no definition to the word " paper." Neither does it provide that the paper must be a newspaper, or an illustrated paper. So far as any definition is afforded by the statute, there is just as much authority for saying that the paper must be a written paper as that it must be a newspaper, or any other kind of printed paper. There is just as much authority for saying that the matter must be impressed upon the paper by a type-writer, as that the paper shall be an illustrated paper. Clearly, we must look beyond the statute for a definition of the word " paper," and must give to it such a definition as the Legislature evidently intended it should have in the connection in which it is used, and thus carry out the intent of that body in the enactment of the law. The word "paper," in its ordinary signification, may mean either a written or printed paper. It is a usual thing to speak of a person having written or read a paper upon some subject.

That paper, as read, may be either in his own handwriting, or it may be by a type-writer, or in print; but it is still his paper, and means the same thing. And so it is usual to speak of a man's outstanding paper, in the way of notes, bills, or other obligations. They may consist partly of writing and partly of print, or entirely of one or the other, and yet they are his paper.

The word "paper" is very frequently used in the Revised Statutes of 1881. Thus, the court may compel parties to produce any paper. Section 480. The clerk must endorse upon papers the date of the filing. Section 483. He gets a fee for filing each paper, and for a copy thereof. Sections 5854, 5859. The auditor is required to file papers. Section 5908. It is made a crime to alter, secrete, take away, or steal any paper. Sections 1937, 1939. Other sections use the word "paper" in a like sense. These sections, of course, refer to what are known as court papers, and usually such papers are written papers, but they are not always written, nor need they be. Frequently, they are printed, and more frequently the type-writer is used. However that may be, they are still papers.

Worcester gives as one of the definitions of paper, "Any written paper or instrument; a writing;" and, further, "A printed sheet." One of Webster's definitions is, "A printed or written instrument; a document, essay, or the like; a writing."

In the case of *State* v. *Jones*, 36 Am. Dec. 257, it was held that no material variance exists between an indictment for forgery and the proof adduced in support of it, where the indictment described the forged instrument as a paper writing, and the proof showed it to have been partly printed and partly written. The court said: "An instrument signed by a party is, in legal parlance, the paper writing of such a party. It is his signature to it which gives it that character, and not the body of the instrument. In a declaration on a note of hand, it is described as a note in writing, although every word

except the signature may be in print. So of a bond partly written and partly printed, it is said to be 'the writing obligatory' of the party executing it."

In the case of *United States* v. *Gaylord, supra,* Judge DRUMMOND said: "'Paper' is a word of extensive meaning. It may comprehend anything that has on it what is obscene, lewd, or lascivious." These authorities fully support our conclusion, that the word "paper" in our statute has reference to the written or printed matter, and that the matter may be either written or printed. The case last above cited arose under section 3893, R. S. U. S., which makes it unlawful to send through the mails any obscene, lewd or lascivious book, pamphlet, picture, paper, writing, print or other publication of an indecent character. The inhibitions in that statute thus far, it will be observed, are the same as in our statute, except the word "writing." And while the case was made to turn upon that word, we think that the decision and reasoning of the court are authority in support of a holding that the word "paper" in our statute includes a letter. In that case, the indictment charged the defendant with having mailed a lewd, obscene and lascivious letter. The point was made by the defendant, that the indictment did not charge an offence, because, in the statement of the inhibited articles in the statute, the word "letter" is not used, and for the reason that the writing must be something in the nature of a publication. The court said: "A letter is certainly a writing. If addressed by one person to another, while we may call it a letter, it is also a writing, whether the characters are made with a pen, or by type, or in any other similar manner. A very common practice in writing letters at the present day is the use of the 'type-writer,' as it is termed. That would certainly be a writing, although the letters and words are marked by a machine upon the paper; and so if the words were printed with a pen, instead of being made in a running or flowing hand. The mere fact that they were not written with a pen and ink of the ordinary kind would not

Thomas *v.* The State.

prevent it from being a letter; neither would any of these forms prevent it from being a writing, within the meaning of the statute."

As we have seen, one of the usual definitions of the word "paper" is "a writing." Worcester defines a writing to mean anything written, a written paper of any kind. If, then, the word "paper" is the equivalent of "a writing," and a writing under the United States statute includes letters, it would seem to follow as a logical conclusion, that the word "paper" in our statute includes letters. That the word "paper," as used in our statute, does include letters, is, we think, the reasonable interpretation to put upon the statute. Such an interpretation is not in violation of, but in harmony with, the usual definition of the terms therein used. That it is in harmony with the spirit and purpose of the statute, there can be no doubt. The limited construction contended for by appellant would, in a large measure, thwart the main object of the statute. If the sending of one obscene, lewd, and lascivious letter is not an offence under the statute, of course, the sending of a hundred or many hundreds of such would not be. Under the process of manifolding, many such letters could be sent out without a very great increase of labor. And so, such letters might be printed and sent out in sealed envelopes as private communications. They would be none the less letters, because printed, and thus these obscene, lewd and lascivious communications might be sent broadcast over the State, into the homes and to the youth, and the law, intended to prevent the use of such corrupting agencies, would become, practically, a dead letter.

Another objection urged is, that the affidavit and information do not set out the letter *in hæc verba.* After the averment that appellant mailed a lewd, obscene, indecent and lascivious paper and letter, the affidavit and information proceed as follows: " Which said paper and letter then and there was and is of the following substance, purport, tenor and effect, and of which the following words and figures, except as herein

otherwise stated and explained, is substantially a true copy, to wit."

Here the letter is set out in full, with the omission of a few words that were illegible; then follows this: "That in the original of said paper and letter in the writing, subject and context thereof, at the point and place therein indicated and pointed out and exhibited by the asterisks or stars included in brackets, in the foregoing copy, there is one line of writing, of about six words, dimmed and erased, caused by the folding and wear, to such an extent that the same is undecipherable, and the original wording thereof is wholly lost and unknown to this deponent, and, therefore, the true purport and effect of such part can not be given or set out. Said paper and letter on the envelope thereof, then and there being, was by said Joseph A. Thomas, immediately prior to placing and depositing thereof as aforesaid, subscribed and addressed as follows."

It will be noticed that in the portion preceding the copy, apparently contradictory terms are used. The word "purport," it has been held, means the substance of an instrument as it appears on the face of it to every eye that reads it. The word "tenor" means an exact copy of an instrument. *Fogg* v. *State*, 9 Yerger (Tenn.) 392; *Myers* v. *State*, 101 Ind. 379; *State* v. *Atkins*, 5 Blackf. 458.

"Substantially a true copy," does not mean a full and exact copy, but rather a copy of the material and essential parts, or an abstract of them. We have, then, in the use of the word "tenor," an averment that the copy of the letter set out is a full and exact copy, and in the words "substantially a true copy," it may be said, an averment that the copy as set out is a copy of the material or essential parts of the letter. But we think, that taking the copy as we find it set out, with all of the averments in relation to it, it sufficiently appears that it is a true and full copy, except the illegible portion, for the failure to set out which there is a sufficient excuse given. The words "substantially a true copy," in the connection and

manner in which they are used, evidently refer to the copy as complete so far as it goes, but not an exact, full and complete copy, because of the omission of the illegible portion. This is made apparent by what follows the copy. These following averments fully support the preceding averment that the letter (except the omitted portion) is set out according to its tenor, which means that the copy is an exact one.

It may well be doubted, whether, under section 1751, R. S. 1881, it is necessary, in a case like this, to set out the letter *in hæc verba*. About that, however, we express no opinion here.

It has been many times held, and it seems to be now the general American doctrine, that in a case like this the obscene book or paper need not be set out in the indictment, if it be properly described, and the indictment contains the averments, that it is so obscene that it would be offensive to the court, and improper to be placed on the records thereof, and that, therefore, the grand jury did not set it forth in the indictment. *Commonwealth* v. *Holmes,* 17 Mass. 336; *Commonwealth* v. *Sharpless,* 2 S. & R. 91; *State* v. *Brown,* 27 Vt. 619; *United States* v. *Bennett,* 16 Blatchf. 338; *McNair* v. *People,* 89 Ill. 441; 1 Bishop Crim. Proc., section 496; 2 Bishop Crim. Proc., section 709; Bishop Directions and Forms, section 623.

The ground of the ruling, as given in one of the Massachusetts cases, is, that to require the obscene matter to be set out would be to require that the public itself should give permanency and notoriety to indecency, in order to punish it. In this case, however, the indecent matter is set out, and we must deal with the case as it comes before us, and indicate nothing as to whether or not the rule of the above cases may be applied in this State.

Twenty-six assigned causes for a new trial call in question the rulings of the trial court in the admission of testimony. One May Stewart was allowed to testify that she had carried on a correspondence with appellant, and received ten letters

from him, all of which she produced and identified. For convenience, the prosecuting attorney seems to have numbered these from 1 to 10. To some of these, as indicated by the evidence, the name of appellant is signed in full. Others, it appears, were signed as that set out in the information, "A Friend," and others again, by his initials. They were received at different times, near the time when Miss McQuinney received those directed to her, upon one of which this prosecution is based. In answer to questions as to when she became acquainted with appellant, May Stewart was allowed to testify that she had no personal acquaintance with him until after she had received the first four or five letters. To these letters, as we infer from the evidence, his name was not signed in full. Miss McQuinney received two letters, which the State claims were sent to her through the post-office by appellant. These were numbered, and referred to upon the trial as numbers "11 and 12." "No. 12" is the one set out in the information. The witness May Stewart was allowed to testify that, through and by her correspondence with appellant, she was acquainted with his handwriting, and that letters numbered 11 and 12 were written by him. All of the testimony by this witness was objected to by appellant, and sternly resisted, upon the grounds, among others, that it related to collateral matters, would tend to create an impression in the minds of the jury that appellant had been guilty of other improprieties and crimes similar to that charged in the information, and thereby create a prejudice against him, and was intended to afford the means of comparison of handwritings.

The gravamen of the offence, under the above section of the statute, is the sending through the mails, or otherwise, of lewd, obscene or lascivious papers, etc. It is not material under that section, whether the writing be by the sender or by some one else. Did appellant send the letter? That is the question for decision. He denied having sent it, and put the State to proof. Direct evidence seems to have been

Thomas v. The State.

wanting. No one saw him mail it. The next best proof was that which the State attempted to make, and that was, that the letter and the address upon the envelope were in his handwriting. That proof became very important and material, and if made, would be sufficient to justify a conviction, unless overthrown by appellant. It is well settled, that a person may, by and through a correspondence with another, become so well acquainted with his handwriting as to be competent to testify as to the genuineness of a writing claimed to be his. Abbott Trial Ev. 393; Roscoe Crim. Ev. 174–5; 1 Greenl. Ev., section 577; *Rogers* v. *Ritter*, 12 Wall. 317.

A party producing a witness to testify to the genuineness of a handwriting, not only has the right to, but is under the necessity of first showing his qualification. The State, therefore, clearly had the right to establish the competency of the witness Stewart, by showing that she had carried on a correspondence with appellant, and to show the extent of that correspondence and her personal acquaintance with him. That the personal acquaintance did not antedate all of the letters received by her, can make no difference. The jury were not and could not have been influenced by the contents of these letters, because they were not read in evidence. For aught that appears, there was nothing improper in them. And then, too, the court instructed the jury that the evidence of the witness Stewart should only be considered by them upon the question of handwriting.

Her evidence was sufficient to establish her competency to testify, and hence her testimony that letter " No. 12 " is in the handwriting of appellant, was properly admitted. And so, too, her testimony that letter " No. 11 " is in the handwriting of appellant was properly admitted, if that letter itself was competent evidence for any purpose, a question we shall hereafter consider.

May Stewart testified, that by and through her correspondence with appellant, she was acquainted with his handwriting, and able to state that letters " No. 11 " and " No. 12 "

were in his handwriting. Such evidence is not regarded as being based upon a comparison of handwritings, but upon an acquaintance with, and knowledge of, the handwriting.

Following the testimony of the witness Kennedy, showing that he was acquainted with appellant's handwriting, the prosecuting attorney handed to him letter "No. 6," received by May Stewart, and interrogated him as to the signature thereto. The witness answered that it was the genuine signature of appellant. It was objected again that this letter was not connected with the case; that testimony in relation thereto would raise a collateral issue, and that the purpose was to get the benefit of a comparison of handwritings. If such was the purpose of the testimony, it is not shown by the record. If the evidence was competent for any purpose, there was no error in admitting it over the objections stated. We think that it was competent in corroboration of the witness Stewart. Proving the signature to the letter to be appellant's, tended to prove that appellant wrote the letter, and thus in some degree corroborated the statement of the witness Stewart, that she received the letter in a correspondence with appellant. This no more raised a side issue than did her testimony in relation to the correspondence; and that testimony, we have seen, was competent, as showing her qualification to judge of and testify concerning the handwriting in letter "No. 12," received by Miss McQuinney, and set out in the information.

The witnesses Stivers and Kennedy, in answer to questions by the prosecuting attorney, were allowed to state that letter "No. 11," received by Miss McQuinney, is in the handwriting of appellant.

These witnesses were both acquainted with the handwriting of appellant. Their testimony was based upon that knowledge, and not upon any comparison of handwritings. Their testimony was clearly competent and relevant, if letter "No. 11" is in any way connected with the case and competent testimony. As before said, that question will be hereafter noticed.

Another question is made upon a part of Kennedy's testimony upon re-examination by the prosecuting attorney. On that re-examination, the witness testified that his recollection of the handwriting of appellant had been refreshed by an examination of a paper in his possession, written by appellant, some four or six months prior to the trial.

The question raised upon this evidence can avail appellant nothing, for the following reasons:

*First.* Appellant first asked the witness about having refreshed his recollection.

*Second.* The witness was allowed to answer upon the re-examination without objection.

*Third.* A witness who shows himself to be acquainted with another's handwriting may, before or at the trial, refer to papers in his possession which he knows to be in the handwriting of the other, to refresh his memory before testifying. Abbott Trial Ev. 395; *Redford* v. *Peggy,* 6 Rand. (Vâ.) 316; *Smith* v. *Walton,* 8 Gill (Md.) 77; *McNair* v. *Commonwealth,* 26 Pa. St. 388.

We come now to letter " No. 11," and the alleged error in allowing it, and the envelope in which it was received, to be read in evidence, observing that the evidence as to the handwriting upon the envelope was shown to be appellant's, by the same evidence that was adduced to show that the letter was in his handwriting. This letter, as we have seen, was addressed to, and received by, Miss McQuinney, to whom and by whom letter " No. 12 " was addressed and received.

The evidence is sufficient, in the absence of something to the contrary, to show that this letter " No. 11," and the address upon the envelope, are in appellant's handwriting. This being established, the question remains, were the letter and the address upon the envelope competent evidence for any purpose? Appellant concedes that this letter is lewd and obscene, and argues that, because it is so, the sending of it was a crime under the statute for which appellant might be pun-

ished, if he wrote and sent it, and that, therefore, it should not have been admitted and read in evidence.

The rule is, that the evidence must be relevant to the issues in the case. And it is well settled that a defendant ought not to, and can not, be convicted of the offence charged simply because he has been guilty of another offence. And hence, evidence of a distinct and separate offence is not admissible to prove that the defendant committed the offence charged. But there are cases where evidence of other like offences, committed by the defendant, is relevant and competent in the case on trial. The admissibility of such evidence in such cases is, in a sense, an exception to the general rule. In such case, the evidence is not to be excluded simply because it may show that the defendant had been guilty of other offences. It is said in Roscoe Crim. Ev. 90: " The notion that it is in itself an objection to the admission of evidence that it discloses other offences, especially where they are the subject of indictment, * * * is now exploded. * * * If the evidence is admissible on general grounds, it can not be resisted on this ground."

It will not be necessary here to cite or go into an examination of the many cases which establish, or seem to establish, exceptions to the general rule. It is sufficient for the purposes of this case, that there are two well settled exceptions, and these are where an intent or guilty knowledge is an element of the offence charged. *Bersch* v. *State*, 13 Ind. 434; *Robinson* v. *State*, 66 Ind. 331; *Harding* v. *State*, 54 Ind. 359; *Lovell* v. *State*, 12 Ind. 18; *Doolittle* v. *State*, 93 Ind. 272; *Strong* v. *State*, 86 Ind. 208 (44 Am. R. 292); *Koerner* v. *State*, 98 Ind. 7; see, also, *State* v. *Markins*, 95 Ind. 464 (48 Am. R. 733).

Thus, if a party is charged with knowingly making, holding or passing forged paper, it is competent to show that shortly before or shortly after the event charged, he had held or uttered similar forged instruments to an extent which makes it improbable that he should have been ignorant of the forgery.

*McCartney* v. *State*, 3 Ind. 353; Wharton Crim. Ev., sections 34, 39, and cases there cited; *State* v. *McAllister*, 24 Maine, 139; *Commonwealth* v. *Stearns*, 10 Met. 256; *Wash* v. *Commonwealth*, 16 Grat. 530; *Mason* v. *State*, 42 Ala. 532; *Heard* v. *State*, 9 Texas Ap. 1; *Steele* v. *People*, 45 Ill. 152.

And so it is said, that guilty knowledge being the gist of the offence of receiving stolen goods, receptions about the same time of other goods of a similar character stolen by the same person or persons, connected with him, may be put in evidence on the trial of an alleged receiver. Wharton Crim. Ev., section 44, and cases there cited; *State* v. *Ward*, 49 Conn. 429; *Kilrow* v. *Commonwealth*, 89 Pa. St. 480; *Yarborough* v. *State*, 41 Ala. 405; *Devoto* v. *Commonwealth*, 3 Met. (Ky.) 417.

In the case of *Bottomley* v. *United States*, 1 Story, 135, that eminent judge said: "In all cases where the guilt of the party depends upon the intent, purpose, or design with which the act is done, or upon his guilty knowledge thereof, I understand it to be a general rule, that collateral facts may be examined into, in which he bore a part, for the purpose of establishing such guilty intent, design, purpose, or knowledge. * * * * In short, wherever the intent or guilty knowledge of a party is a material ingredient in the issue of a case, these collateral facts," that is, other acts and declarations of a similar character, "tending to establish such intent or knowledge, are proper evidence." And so it has been held, that on a charge of sending a threatening letter, prior and subsequent letters from the prisoner to the party threatened, may be shown in evidence as explanatory of the meaning and intent of the particular letter on which the prosecution is based. Wharton Crim. Ev. (9th ed.), section 46 n.; *Rex* v. *Robinson*, 2 Leach C. C. 869.

As we have seen, the charge in the case before us is, that appellant knowingly, etc., placed the lewd and obscene letter in the post-office. The statute, in defining the offence, does

not use the word " knowingly," nor the word " intentionally;" but, evidently, in order to make out the offence, it was necessary for the State to prove guilty knowledge on the part of appellant.   It can not be conceded that if some other person had written the letter, put it in an envelope directed to Miss McQuinney, and so placed it with appellant's mail that he deposited it in the post-office without notice or knowledge, he would have been guilty of the offence charged.   To so hold would be to turn an innocent oversight into a crime. This the statute was not intended to do.   It is to punish the wicked and guilty, and not those who have neither knowledge of, nor intention in, the act.   If, then, guilty knowledge is an ingredient of the offence, it was necessary to in some way prove that guilty knowledge.   It may be said that the jury would have the right to infer the guilty knowledge from the proof of the act charged.   That is doubtless so, but that does not render other proof of that guilty knowledge incompetent.   When a fact is to be proven, the law requires the best evidence attainable, but it does not put a limit upon the amount of proof that may be adduced.   When we have reached the conclusion that guilty knowledge is necessary to make out the offence, we bring the case within the rule established by the above cited authorities.   Under that rule we think that letter " No. 11," and the address upon the envelope, were competent and relevant evidence, if not for the purpose of showing that appellant deposited letter " No. 12 " in the post-office, for the purpose of showing, or tending to show, that if he did deposit it he did so with a guilty knowledge.

Objection was made below to the introduction in evidence of letter " No. 12."   The ground of the objection was, that there is a variance between it and the copy set out in the information.   The burden of the letter is to convince Miss McQuinney that she should seek the opportunity, and have sexual intercourse with a man.   The writer pretends to be a woman, and to give the advice as such.   In relation to young girls, and Miss McQuinney as one of the class, and in rela-

tion to following the suggestions in the letter, and disregarding the counsels of the mother to the contrary, there occurs in the copy of the letter as set out in the information the following, between which and the letter in evidence, it is claimed, there is a fatal variance, viz.: Copy. "She should do what nature formed her, as she is, for, that is, to have intercourse," etc. The letter in evidence omits the word "to" before the word "have." Copy. "As my mother advised me so much to always avoid such things." The letter in evidence has the word "had" before the word "advised." Copy. "They will advise you to pay no attention to this, although they know it is right." The letter in evidence has the word "may" before the word "know." Copy. "You have entire control over yourself." The letter in evidence omits the word "entire" before the word "control."

The most that can be said of the addition or omission of the words in the copy is, that the word "to" supplies an ellipsis in the letter; the word "entire" is a qualification of the word "control," and the other words added or omitted affect the modes and tenses of the verbs with which they are used. The sense and purport of the copy is not different from the letter. There are some other instances where nouns and verbs are used in the singular and plural number in the copy, and otherwise in the letter, but these differences are not such as to affect the sense and purport.

The copy, however, as these differences show, is not an exact copy of the letter read in evidence, and the question is whether this difference constitutes such a variance as that the judgment must be overthrown on account of it. Such a variance in a prosecution for forgery would be fatal, under the strict rules applied in such cases. Whart. Crim. Ev., section 114*a; Porter* v. *State*, 15 Ind. 433; *Zellers* v. *State*, 7 Ind. 659; *Smith* v. *State*, 33 Ind. 159; *Sharley* v. *State*, 54 Ind. 168; *Rooker* v. *State*, 65 Ind. 86; *Abbott* v. *State*, 59 Ind. 70; *State* v. *Pease*, 74 Ind. 263.

The strict rules applied in criminal pleading and practice,

Thomas *v.* The State.

are a part of our inheritance from the mother country. They came to us from another age, and grew up in a different state of society. Some of them have been greatly modified by statutes in many of the States, and others have been, in some degree, relaxed by the rulings of the courts. The modern tendency, both in legislation and judicial determination, is to relax the severe rigor of those rules, so as to apply them to the changed order of things, and still protect the liberty of the citizen to the fullest extent. In speaking of those strict rules, more especially as applied to criminal pleadings, Mr. Wharton, in his work on Criminal Pleading and Practice, at section 173, says: "The great rigor of the old English law in this respect was one of the consequences of the barbarous severity of the punishment imposed. A more humane system of punishment was followed by a more rational system of pleading."

In keeping with the advancement in this regard, it is enacted in our statutes, that an indictment or information is sufficient, if it can be understood therefrom: "*Fourth.* That the offence charged is clearly set forth in plain and concise language, without unnecessary repetition. *Fifth.* That the offence charged is stated with such a degree of certainty that the court may pronounce judgment, upon a conviction, according to the right of the case." R. S. 1881, section 1755. And so, too, it is provided that "No indictment or information shall be deemed invalid, nor shall the same be set aside or quashed, nor shall the trial, judgment, or other proceeding be stayed, arrested, or in any manner affected, for any of the following defects: * * * *Sixth.* For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged. * * * *Eighth.* For omitting to state the time at which the offence was committed in any case in which time is not the essence of the offence; nor for stating the time imperfectly, unless time is of the essence of the offence. * * * *Tenth.* For any other defect or imperfection which does not tend to the prej-

udice of the substantial rights of the defendant upon the merits." R. S. 1881, section 1756. And so, too, it is provided, that the rules of evidence prescribed in civil cases shall govern in criminal cases. R. S. 1881, section 1796. And, finally, it is provided, that " In the consideration of the questions which are presented upon an appeal, the Supreme Court shall not regard technical errors or defects or exceptions to any decision or action of the court below, which did not, in the opinion of the Supreme Court, prejudice the substantial rights of the defendant." Sec. 1891, R. S. 1881. See *Myers* v. *State,* 101 Ind. 379; *O'Connor* v. *State,* 97 Ind. 104; *Dukes* v. *State,* 11 Ind. 557; *Stout* v. *State,* 96 Ind. 407; *State* v. *Sammons,* 95 Ind. 22.

The case before us is based upon a recent statute creating a new offence, and this is the first case under that statute that has reached this court. Keeping in view the nature of the case and the spirit of the criminal code, we are not inclined to extend, and apply to it, the strict rules applied in forgery and like cases, but rather the liberal rules prescribed by the above cited statutes. Here, as we have seen, the gravamen of the offence is not the writing of the lewd and obscene letter, but the depositing of it in the post-office. The letter in evidence is, in sense, meaning and purpose, the same as the copy set out in the information. By its introduction in evidence, appellant could by no possibility have been taken by surprise or injured. The ruling of the court, therefore, in admitting the letter in evidence, was such as could by no possibility prejudice the substantial rights of appellant. And whether it was technically wrong or not, it was such a technicality as this court should disregard under the above statutes.

We by no means intend to hold that if the variance had been a substantial one, and thus one that might have affected the substantial rights of appellant, it would or could be disregarded. Nor are we to be understood as giving our sanction to a loose and careless practice in such cases. With the exercise of reasonable care in copying instruments into in-

dictments and informations, the cases of variance that would reach this court would be few.    That degree of care ought to be exercised.

When appellant was upon the witness stand, and after he had denied that he had written either letter "No. 12" or the address upon the envelope, and had denied that he mailed the letter, or caused it to be mailed, the prosecuting attorney, on cross-examination, placed in his hands the letters received by May Stewart, and asked him to examine them, and state in whose handwriting they were. To this appellant objected, upon the grounds that they were not papers in the case, and were not referred to in the examination in chief; that a refusal to answer might be to his prejudice with the jury, and that an answer might criminate himself. All of these objections were overruled; he excepted, and, without further stating a cause, refused to answer.    He was not compelled to answer.    Of course, if he had not become a witness in his own behalf, he could not have been compelled to testify, and such questions could not have been propounded.

It is said in the case of Commonwealth v. Nichols, 114 Mass. 285 (19 Am. R. 346): "But if he" (defendant) " puts himself on the stand as a witness in his own behalf, and testifies that he did not commit the crime imputed to him, he thereby waives his constitutional privilege, and renders himself liable to be cross-examined upon all facts relevant and material to that issue, and can not refuse to testify to any facts which would be competent evidence in the case if proved by other witnesses." See, also, cases there cited. State v. Ober, 52 N. H. 459 (13 Am. R. 88) ; Connors v. People, 50 N. Y. 240; Inhabitants, etc., v. Henshaw, 101 Mass. 193 (3 Am. R. 333) ; 2 Criminal L. Mag., p. 313.

Whether or not appellant might have been compelled to answer the questions propounded to him, on the ground that it would criminate himself, is a question we need not now decide. However that may be, the prosecutor undoubtedly had the right to cross-examine him upon all facts relevant and mate-

Thomas *v.* The State.

rial to the issue, and within the scope of a legitimate cross-examination.

When a party voluntarily takes the witness stand, and makes a broad denial of the offence charged, whether that denial be in general or specific terms, much latitude should be allowed in the cross-examination. Here appellant's denial put in issue all of the testimony adduced in support of the State's case. If his testimony was true, all that in favor of the State was either ignorantly or wilfully false, including that of May Stewart. The credibility and weight to be given to her testimony depended upon the letters she claimed to have received from appellant. We think, therefore, that there was no available error in the prosecuting attorney propounding the question to appellant.

But one question remains that needs to be referred to. The witness McIntosh was called by appellant as an expert witness. Appellant had made an affidavit for a change of venue in the case. McIntosh, in behalf of appellant, was allowed to compare the signature to that affidavit with letters "No. 11" and "No. 12," and their envelopes, and to give his opinion as to whether or not the handwriting of all were alike, or by the same person. Upon cross-examination, the prosecuting attorney placed in the hands of the witness letter "No. 6," received by May Stewart, and interrogated him as to whether or not it is in the same handwriting as "No. 12." As a means of testing the accuracy of the witness as an expert, upon cross-examination, we think there was no available error here.

We have given this case a patient and careful examination, and while in some instances the State went, perhaps, to the full limit of the rules of evidence, we are not satisfied that any such error intervened as would justify a reversal of the judgment. The judgment is, therefore, affirmed, with costs.

Filed Oct. 27, 1885.