# KEMP *v.* UNITED STATES.

CRIMINAL LAW; ABORTION; POSTOFFICE; NONMAILABLE MATTER; EVIDENCE; DECOY LETTER; WITNESS; VARIANCE.

1. An obscure reply letter should be interpreted in the light of the letter to which it is a reply, in ascertaining whether it comes within section 211 of the United States Criminal Code, making it an offense to send through the mails a letter giving information as to how or where an abortion may be procured.

2. In a prosecution for violation of section 211 of the United States Criminal Code [35 Stat. at L. 1129, chap. 321, U. S. Comp. Stat. 1911, p. 1651], making it an offense to send through the mails a letter giving information as to how or where an abortion may be procured, the fact that a letter, innocent on its face, gave such information, may be shown by extrinsic proof.

3. An obscure letter may be explained by testimony of a detective who interviewed the sender in respect to its alleged subject-matters for the purpose of bringing it within section 211, of the United States Criminal Code, making it an offense to send through the mails a letter giving information as to how or where an abortion may be procured.

4. A letter reading, "Your letter received, and would say that it would cost about two hundred and would have to stay about one week," when interpreted in the light of a letter to which it was a reply and which stated that the writer had gotten a girl into trouble and that, "if you can and will take this matter for us and relieve the girl of her trouble, will you please let us know what it will cost and about how long she would have to stay,"—comes within section 211, of the United States Criminal Code, making it an offense to send through the mails a letter giving information as to how or where an abortion may be procured, the interpretation being confirmed by the testimony of a detective who interviewed the writer of the reply letter, as to its subject-matter.

5. For the purpose of determining whether a reply letter gave information as to where or how an abortion could be procured so as to render it nonmailable under section 211 of the United States Criminal Code, the test is whether the letter, considered with the one to which it was a reply, gave the addressee information upon which he could act

intelligently, and it is immaterial whether the writer intended to give the treatment himself or to get another to do it.

6. The fact that a letter was elicited by a government detective's decoy letter, which was signed with a fictitious name and contained a misstatement of fact, does not prevent the sender's prosecution under section 211 of the United States Criminal Code, making it an offense to send through the mails a letter giving information as to how or where an abortion may be procured; and it is therefore immaterial whether the detective acted upon his own initiative or upon complaints from others.

7. The refusal of the trial court to permit a government detective to name the person who complained against an accused from whom the detective by a decoy letter elicited a letter alleged to be in violation of section 211 of the United States Criminal Code, making it an offense to send through the mails a letter giving information as to how or where an abortion might be procured, is not objectionable as restricting the accused's right to full cross-examination, where the decoy letter was admitted in evidence, and the detective testified that the idea of writing the same originated with him, and that it was fictitious in subject-matter and signature.

8. The motive of a government detective in writing a decoy letter does not affect the guilt of the addressee in replying to the same in violation of section 211 of the United States Criminal Code, making it an offense to send through the mails a letter giving information as to how or where an abortion may be procured.

9. It is not error, in a prosecution for violation of section 211 of the United States Criminal Code, making it an offense to send through the mails a letter giving information as to how or where an abortion may be procured, to deny the defendant the right to recall a witness for cross-examination in order to lay the ground for his impeachment with respect to his prior testimony, which was to the effect that when he called to interview the defendant, an alleged physician, on the subject-matter of the letter, he looked for an outside physician's sign but saw none at the defendant's address, since such matter is collateral and immaterial, the offense being subject to commission by a layman as well as a physician,—especially where evidence was admitted that the defendant had for eight years had such a sign, which had never been removed.

10. The question of variance is one of law for the court, and unless, in a criminal case, it appears that the variance is prejudicial to the rights of the accused, it will not be deemed material, for the old technical rules of pleading in criminal cases, inherited from an early English civilization, have been greatly relaxed, and have been supplanted by the more reasonable rule that only material and substantial vari-

ances between the pleadings and the proofs will be regarded. (Citing *Williams* v. *United States,* 3 App. D. C. 335.)

11. In a prosecution under section 211 of the United States Criminal Code, making it an offense to send through the mails a letter giving information as to how or where an abortion may be procured, the gravamen of the offense is not the writing of the letter, but the depositing of it in the mail, and the question of variance between the language of the letter charged and the one proved, need not therefore be determined by the strict rule which is sometimes invoked in cases of forgery, fraudulently procuring an indorsement of a promissory note, or other kindred crimes, where the offense relates directly to the instrument relied upon.

12. No fatal variance in a prosecution for violation of sec. 211, U. S. Crim. Code, making it an offense to send through the mails a letter giving information as to how or where an abortion may be procured, exists between the allegation in the indictment of the sending of a letter reading, "It would cost about two hundred and have to stay here one week," and a letter introduced in evidence, reading, "It would cost about two hundred & would have to stay here one week."

13. The offense denounced by sec. 211, U. S. Crim. Code, making it punishable to send through the mails a letter giving information as to how or where an abortion may be procured, is complete when such a letter is deposited in the mail; and it is immaterial that the letter, having been sent in response to a decoy letter signed by a fictitious name, was addressed in the same name and could therefore never reach the person addressed.

No. 2593.  Submitted January 5, 1914.  Decided March 2, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia convicting him of sending a letter through the mails containing forbidden information.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellant, Thomas J. Kemp, defendant below, was convicted of the crime of sending a letter through the mails in violation of section 211 of the United States Criminal Code [35 Stat. at L. 1129, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1651], which, in part, provides as follows: "Every * * * letter

\* \* \* or notice of any kind giving information directly or indirectly, \* \* \* where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed, or how or by what means conception may be prevented or abortion procured, whether sealed or unsealed, \* \* \* is hereby declared to be nonmailable matter, and shall not be conveyed in the mails, or delivered from any postoffice or by any letter carrier. Whoever shall knowingly deposit, or cause to be deposited for mailing or delivery, anything declared by this section to be nonmailable \* \* \* shall be fined \* \* \* or imprisoned," etc.

It appears that one James L. Woltz, a detective in the employ of the Postoffice Department, caused to be mailed the following letter from Concord, North Carolina, to defendant in Washington, District of Columbia, signed by the fictitious name, "Quincy Compton:"

Concord, N. C., Nov. 14, 1912.

Dr. Thomas J. Kemp,
     433 G St., N. W.,
       Washington, D. C.

My Dear Doctor:—

I trust you will pardon my writing you as I am, but I am in such great distress and so anxious to find some way out of it, that this is my only excuse. I am a young man, married, and have been unfortunate enough to have gotten a young woman friend into trouble, to be plain, she is in a family way. Of course, I cannot marry her, and the condition she is in makes it necessary that she be afforded relief at as early a period as possible. She cannot permit the matter to go to full period either, as that would mean the ruin of her reputation, a thing not to be thought of. The girl is only twenty-two years old and is about two and a half months gone. If you can and will take this matter for us and relieve the girl of her trouble, will you please let me know what it will cost and about how long she would have to stay up there in Washington? Will it be necessary for her to go to a Hospital or could the business be done

here by the use of medicines? I want to be frank and tell you that we have tried two or three things we saw advertised and got at the drug store here, but they have been without effect.

Sincerely,

Quincy Compton.

In answer to this letter, defendant mailed in the District of Columbia, in an envelop addressed to Quincy Compton, Concord, North Carolina, the following letter:

Washington,

Dear Sir:—

Your letter received and would say it would cost about two hundred & would have to stay here one week—destroy this letter—Can't write about this better come—This is answer to your letter won't sign my name.

---

*Mr. John E. Laskey* and *Mr. A. S. Worthington* and *Mr. A. D. Smith* for the appellant.

*Mr. Clarence R. Wilson,* United States District Attorney, and *Mr. Reginald S. Huidekoper,* Assistant, for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is conceded that this letter was written by defendant. For the purpose of interpreting what it was intended to convey, the government introduced the Compton letter in evidence, and the testimony of a detective named Honvery, who interviewed defendant a short time after the letter in question was written, representing that he was Quincy Compton and that the girl referred to in the Compton letter was at the Metropolitan Hotel, in this city, prepared to undergo treatment. He testified that defendant refused to see the girl in his office, but went so far as to procure a room for her and fix the time for the treatment to begin. Much of the evidence given by this witness was

denied by defendant. This, however, created an issue of fact for the jury with which we are not concerned.

It is urged by counsel for defendant that the indictment does not charge an offense, because the letter written by defendant to Quincy Compton does not, in itself, give information "where and by whom any act or operation of any kind for the procuring or production of abortion will be done or performed." The trial court was not confined to the letter of defendant. It properly held that, in determining the intent of defendant, his letter should be interpreted in the light of the one to which his was an answer. "The letter addressed to the defendant, which is set out in the indictment, is perfectly clear in its terms as to what information is desired, and the letter deposited by the defendant, which is alleged to be in pursuance of the request contained in the letter to him, and in reply thereto, and with his knowledge that it gave the information desired, considered in connection with the letter received by him and the allegations in the indictment, is sufficient, in my opinion, to sustain a charge of the offense prohibited by the statute of giving the prohibited information 'directly or indirectly.' " *United States* v. *Kline,* 201 Fed. 954. See also *Ackley* v. *United States,* 118 C. C. A. 403, 200 Fed. 217; *Clark* v. *United States,* 121 C. C. A. 209, 202 Fed. 740; *United States* v. *Somers,* 164 Fed. 259.

It was also competent to establish that defendant's letter gave information prohibited by the statute by the extrinsic evidence of the detective who interviewed defendant when he supposed the girl was in a hotel in this city. "In a prosecution of this character the government is not confined to the letter itself, but may show by any competent extrinsic testimony that the letter gives information which the statute prohibits being given through the mail, and that it was in fact intended to convey such information. If the character of a letter cannot be thus shown by extrinsic facts, the statute under which this indictment is drawn could be easily evaded and would prove a dead letter." *United States* v. *Grimm,* 50 Fed. 528.

Applying these rules of interpretation, it is not difficult to bring this case within the statute. Compton, after detailing the

girl's condition and the relief sought, wrote in part: "If you can and will take this matter for us and relieve the girl of her trouble, will you please let me know what it will cost and about how long she would have to stay up there in Washington?" Defendant replied: "Your letter received and would say that it would cost about two hundred & would have to stay here one week." Read together, defendant's reply can be interpreted as meaning but one thing,—I will perform the operation, or procure someone who will perform it; it will cost two hundred dollars, and the girl will have to stay in Washington one week. This interpretation is confirmed by defendant's interview with the witness Honvery, when he supposed that he was talking to Compton, and that, in response to his letter, the girl had been brought by Compton to Washington. It is unnecessary that the letter should, upon its face, disclose the information. It may be innocent upon its face. *Grimm* v. *United States,* 156 U. S. 604, 39 L. ed. 550, 15 Sup. Ct. Rep. 470; *De Gignac* v. *United States,* 52 C. C. A. 71, 113 Fed. 197.

Defendant was charged with mailing a letter intending to furnish the information sought in the Compton letter. We think the proper test to be applied is, whether or not, reading the letters together, defendant's answer gave Compton information upon which he could intelligently act. Of this there can be no doubt. It matters not whether defendant intended to treat the girl himself or procure another to give the treatment. His letter furnished the forbidden information. To hold that the letter itself must directly contain on its face the information would be to defeat the whole object, purpose, and intent of Congress in enacting this statute.

Error is assigned in the refusal of the court to require witness Woltz, the writer of the Compton letter, to give the name of the person who made complaint against defendant. The record does not disclose that such complaint was ever made. The witness testified: "The letter in question was sent to the defendant not to induce him to break the law, but to discover whether he was using the mails in violation of the law, and but for information possessed by the witness that the defendant

was probably using the mails in violation of the law the letter signed 'Quincy Compton' would not have been sent." It is true this statement was made to the court, out of the hearing of the jury, when the court was ascertaining from this witness his motives in sending the decoy letter, in order that the preliminary question of its admissibility might be determined. The court properly found that the letter was admissible. It is not material upon what information Woltz acted. It does not appear that it was his purpose to induce defendant to commit a crime, but to ascertain whether he was engaged in an unlawful business. It is no defense that the letter written by defendant was in answer to a decoy letter written, as in this case, by a government detective. *Andrews* v. *United States,* 162 U. S. 420, 40 L. ed. 1023, 16 Sup. Ct. Rep. 798. Neither is it material that the letter was written under an assumed name and contained a false statement of fact. The trap set was a proper one. "The official, suspecting that the defendant was engaged in a business offensive to good morals, sought information directly from him, and the defendant, responding thereto, violated a law of the United States by using the mails to convey such information, and he cannot plead in defense that he would not have violated the law if inquiry had not been made of him by such government official. The authorities in support of this proposition are many and well considered. * * * The law was actually violated by the defendant; he placed letters in the postoffice which conveyed information as to where obscene matter could be obtained, and he placed them there with a view of giving such information to the person who should actually receive those letters, no matter what his name; and the fact that the person who wrote under these assumed names and received his letter was a government detective in no manner detracts from his guilt." *Grimm* v. *United States,* 156 U. S. 604, 39 L. ed. 550, 15 Sup. Ct. Rep. 470.

But it is urged that the ruling of the court restricted defendant's right to a full cross-examination of this witness. The admission of the letter, and the further testimony of the witness that "the idea of writing the said letter to the defendant origi-

nated with said Woltz, and the said letter was entirely fictitious, none of the statements of fact therein contained being true, the name of Quincy Compton being also fictitious, there being no such person in existence," were sufficient to lay the witness open to a searching cross-examination as to his motives in writing the decoy letter.

The motive, however, of the writer of the decoy letter is not important. The letter was admissible on its face, irrespective of the motive of the writer. It was not such an inducement to commit crime as the law condemns. It left the way open to defendant, either by ignoring it or by answering it, to disclose that he was not conducting the sort of unlawful business in which he was requested by its express terms to engage. It was optional with him either to act the part of an honest man or the part of a criminal. Without any influence from anyone he chose the latter course. He is estopped to complain when he is confronted with the trap into which he knowingly and voluntarily stepped. "Even if inducements to commit crime could be assumed to exist in this case, the allegation of the defendant would be but the repetition of the plea as ancient as the world, and first interposed in Paradise: 'The serpent beguiled me and I did eat.' That defense was overruled by the great Lawgiver, and whatever estimate we may form, or whatever judgment pass upon the character or conduct of the tempter, this plea has never since availed to shield crime or give indemnity to the culprit, and it is safe to say that under any code of civilized, not to say Christian ethics, it never will." *Board of Excise* v. *Backus,* 29 How. Pr. 33.

It is assigned as error that the court refused to permit counsel for defendant to recall, for further cross-examination, the witness Honvery, the detective who interviewed defendant under the assumed name of Quincy Compton, when he (defendant) supposed the girl was in this city. This witness testified in the course of his examination that he "looked for, but saw no sign on the outside of 433 G street, and his recollection was that there was no sign there." It appears that after witness had testified, in a conversation with a policeman relative to the

sign,·witness said that he had testified there was no sign on defendant's office, and he did not want to be made out a liar. It was evidently for the purpose of laying the ground for impeachment by the testimony of the policeman that counsel for defendant sought to recall this witness. This was merely a collateral matter. It is not important, nor even material, whether there was a sign on the house or not. It is conceded defendant is a physician; but that is not important, since the offense could be as well committed by a layman as a physician. Besides, the defendant got the full benefit of the evidence, in so far as it tended to impeach the witness, when the policeman was permitted to testify as a witness for defendant that "for eight years * * * the defendant had out physicians' signs at his office, which had never been removed."

It is insisted that there is a fatal variance between the copy of the letter signed by defendant, as set out in the indictment, and the original letter offered in evidence. The letter, as set out in the indictment, contained the words, "It would cost about two hundred *and have* to stay here one week." In the original letter, the expression read, "It would cost about two hundred *& would have* to stay here one week." It will be observed that in the copy the word "would" is omitted, and instead of the sign for the word "and" the word is spelled out. These errors in no way change the sense or meaning conveyed by the letter. The question of variance is one of law for the court, and, unless it appears that it is prejudicial to the rights of the accused, it will not be deemed material. The gravaman of the offense here charged is not the writing of the letter, but the depositing of it in the mail. Hence, there is no occasion for the application of the strict rule which is sometimes invoked in cases of forgery, fraudulently procuring an indorsement of a promissory note, or other kindred crimes, where the offense relates directly to the instrument relied upon. *Thomas* v. *State*, 103 Ind. 419, 2 N. E. 808. The old technical rules of pleading in criminal cases, ·inherited from an early English civilization, have been greatly relaxed, and have been supplanted by the more reasonable rule "that only material and substantial vari-

ances between the pleadings and the proofs will be regarded." *Williams* v. *United States,* 3 App. D. C. 335.

The court committed no error in refusing to grant defendant's request for an instructed verdict, or his request for an instruction to the effect that the jury should return a verdict of not guilty if it appeared from the evidence "that there was no such person as Quincy Compton; that the statements in the letter to the defendant signed 'Quincy Compton' were false and were made for the purpose of entrapping the defendant and in pursuance of a plot or scheme adopted and carried out by officials of the Postoffice Department to induce or solicit the defendant to mail a nonmailable letter." We have held it immaterial that the letter addressed to defendant was signed in the name of a fictitious person and that its contents were false. Defendant's crime consisted in mailing a letter containing the forbidden information, and it is not important that it could never reach the person to whom it was addressed. The crime was complete when defendant deposited in the mail a letter giving such information as the statute prohibits. *United States* v. *Grimm,* 45 Fed. 559, 50 Fed. 528, 156 U. S. 604, 39 L. ed. 550, 15 Sup. Ct. Rep. 470; *Ackley* v. *United States,* 118 C. C. A. 403, 200 Fed. 217; *United States* v. *Musgrave,* 160 Fed. 700.

The judgment is affirmed.                    *Affirmed.*