Beckwith, Oh. J.
The action is brought for the foreclosure of a mechanic’s lien. Ethan Allen, late of the city of Buffalo, on or about the 1st day of November, 1887, entered into a contract with the plaintiffs, by which the *913 plaintiffs undertook to furnish the said Allen for his residence, then in process of erection, a “No. 140 Boynton latest improved Crusader furnace, and to set the same in the best masonry work, with four runs of the best heating pipe to the first floor and four runs of tin heating pipe in the second floor, with all the necessary register boxes and hot-air pipes, made of tin, to supply heat to the registers, and all the tin flashings requisite to render the same safe and secure from fire,” in consideration of which furnace and appurtenances the said Ethan Allen agreed to pay the plaintiffs $176.
The plaintiffs performed their undertaking.
On _ the 26th day of December, 1887, said Ethan Allen died intestate, and the defendant, Eliza E. Allen, is his, widow, and the defendant, Frances Julia Allen, his daughter and heir.
The defendants contest the plaintiffs’ claim mainly upon these grounds:
First. That “the hen law does not cover a furnace.”
Second. That Ethan Allen, in his lifetime, paid the plaintiffs.
Third. That the notice of lien is invalid for want of a sufficient verification.
First. The statute, chapter 342 of the Laws of 1885, entitled an act for the better security of mechanics, etc., who perform labor or furnish material for buildings, etc., provides (section 1) that any person who shall perform any labor or service, or furnish any materials used in the erection of any house, may, upon filing the notice of lien prescribed in the fourth section of the act, have a lien for the principal and interest of the price and value of such labor and material.
It seems too plain to require any discussion, that the furnace set within the brick structure and the connecting pipes, and appurtenances were a part of the house, and that the same passed to the heir as a part of the realty, and that the contribution the plaintiffs so made to the construction of the house, entitled them to a lien under the statute.
It seems clear that the furnace and its connections, constructed by the plaintiffs, were in fact, and by the parties to the contract, deemed to be a part of the house.
Secondly, as to payment. The defendants claim, and are very sincere in their belief, that the intestate in his lifetime paid the plaintiffs. They found their belief on the circumstances, that on a certain occasion he took money and went down town with the apparent purpose of paying bills; that the same day he made an entry of payment in his account book on a page where he entered all the payments he made on the construction of the house; that the witness Creagham saw him on the same day that his entry was dated coming up Seneca street, the street where the plaintiffs’ *914 place of business is located, and from the direction of the plaintiffs’ office; afterwards met him on the corner of Main street, and was there told by the deceased that he had got his furnace in, and had just been down and paid for it. And the defendants, for further grounds of assurance that Mr. Allen paid the plaintiffs, and that he would not have made the entry in his book of payment unless he had in fact paid the bill, show that he was a man of marked integrity and of very exact business habits. The place where the deceased made the entry was on a page which contained only the payments made on the construction of the house and purchase of the lot, headed “cost of house and lot.” The entries were fifteen in number, and this was the eleventh, and the defendants produced receipts showing the actual payment by Mr. Allen on the day of the date of the entry, of every sum entered on the page, excepting the one in suit. But the defendants are unable to produce any receipt for this item in question. It is claimed by the defendants that considering the character of Mr. Allen for care and accuracy in his business, his acknowledged integrity, his taking money and leaving his home on the day of the date of the entry with the apparent object of settling his bills, his statement to the witness Creagham the same day, that he had just been down to the defendants’ place and paid the bill, his entry on or soon after returning home, on the said page of his book, of the charge of the payment, that the court ought, Mr. Allen being dead, to infer and find the fact that the payment was made.
There are several difficulties in the way of making such an inference of fact. In the first place, the inference would be entirely uncertain whether he paid to one entitled to receive the money. The testimony of Creagham is of a kind recognized as not very satisfactory, for the reason that a witness is very likely to misunderstand a casual remark made in a merely friendly conversation upon an accidental meeting. While the production of receipts showing that the deceased did actually pay all the other fourteen charges made by him at the dates of their entry, tends to convince the mind that the intestate intended that the entries should be true statements; still, the inability of the defendants to produce a receipt for the item in question, operates, perhaps, quite as forcibly to establish this entry, as an exception. The testimony shows that Mr. Allen was very particular about taking receipts, which is evidenced by the production of receipts for all those items of entry, except the one in suit; and the testimony of Mr. Gieb, of whom the deceased rented a house, before he built the house in question for himself. Mr. Gieb says, that when Mr. Allen came to him to pay his monthly rent, he always came with a receipt for the payment prepared, which he brought with the money. So, therefore, assuming that the court might, from all the circumstances, lawfully deduce a finding of fact as to payment, it would be very difficult to infer satisfactorily from *915 the offered testimony and circumstances, the fact of such payment. If he paid, the uncertainty as to when he paid; why, contrary to his exacting habit, he omitted to take a receipt for this considerable sum; no circumstances raising a probability of a loss of the receipt; the claim of non payment by the plaintiffs against whose business integrity nothing is said—all these circumstances would leave the truth of the matter so uncertain, that the court could not rest satisfactorily on a finding that the intestate actually made the payment.
The defendants have the affirmative, and must satisfy the court of the fact of payment.
But if the evidence offered by the defendants would, properly received, and without objection, justify a finding of payment, there are still the insuperable difficulties in the way of the defendants, that the declarations made by Mr. Allen, to the witness, Creagham, and the entries made by himself in his book, were objected to by the plaintiff’s counsel, and without the aid of such declaration and entry > the defendant’s evidence would be plainly insufficient.
It is perfectly settled by the courts, in a long series of decisions, that entries of that kind, made by Mr. Allen, on a page of his book, being entries in his own favor, are not admissible as evidence. They cannot be admitted under the head of shopkeeper’s charges ; they were not entries against his own interests; they were not “res gestee,” and this court cannot make any new law. That the testimony of the witness Creagham, and that the entries made by Mr. Allen of his payments, are not admissible evidence in favor of the defendants, is elementary, and hardly needs the citation of authorities. I will only refer to Redfield v. Stitt (10 N. Y. State Rep., 366); Vaughn v. Strong (22 N. Y. State Rep., 369); Tilson v. Terwilliger (56 N. Y., 273); Lowery v. Erskine (21 N. Y. State Rep., 922, 923).
The statement of Mr. Allen to the witness Creagham, and his entries, are not rendered admissible evidence by reason of his decease. Romig v. Romig, 2 Rawle (Pa.), 241; Scull v. Wallace, 15 S. & R. (Pa.), 231; Hess’ Appeal, 112 Penn. St., 168.
Third. The defendants further object that the notice of lien is invalid for want of a proper verification, and a great many cases have been cited and supposed analogies argued in support of the position. A verification is necessary simply because it is required by the statute, and the particular statute which demands a verification furnishes the measure of what is required. The statute of 1885, chapter 342, section 4, provides that the notice of lien must be verified “ to the effect that the statements therein contained are true to the knowledge or information and belief of the person making the same.” Section 25 of the statute, declares: “This act is hereby declared to be a remedial statute, and is to be construed liberally to secure the beneficial interests and purposes thereof; and a substantial compliance with its *916 several provisions shall be sufficient for the validity of the lien, or liens, hereinbefore provided for, and to give jurisdiction to the courts to enforce the same.”
The verification appended to the notice of lien is in these words: “Leopold Schwartz, being duly sworn, says: I am one of the claimants mentioned in the foregoing notice of lien; I have read the said notice and I know the contents thereof; the same is true of my own knowledge or information and belief.” The statute says the notice shall be verified to the effect that the “statements” therein contained are true. The affidavit does not state that the “statements ” contained in the notice are true, but that he has read the notice and knows the contents thereof, and the same is true. This language is that in professional use in the verification of pleadings, and signifies that the statements of the notice are true.
When the affiant declares that the notice is true, he must be deemed to speak of the notice as the instrument in writing, and to verify its statements. The remainder of the verification is that the notice is true of affiant’s own knowledge, or information and belief, and, as it seems to me, is a substantial compliance with the statute. Mr. Wait says that it is clearly allowable to frame the verification to all pleadings indiscriminately in the exact words of the statute. 2 Wait’s Practice, 339. It is sufficient if the substance of the statute, without evasion, is contained in the affidavit. Matter of Application, etc., of Macaulay, 94 N. Y., 578; Waggoner v. Brown, 8 How. Pr., 112; Kingsland v. Cowman, 5 Hill, 610.
Justice Bronson, speaking of the form of an affidavit required by statute, says: “ He may obtain an order for that purpose on an affidavit that ‘he believes he has a defense,’ under the statute. Such an affidavit is sufficient because the statute so provides. This statute not only fails to prove anything for the defendants, but it proves something against them. We are to suppose that where the legislature uses different words, different things are intended.” So it may be noticed with respect to the different lien laws, that different forms of verification have been required by different statutes, but where in the statute in question it is finally provided that the verification shall be to the effect that the statements are true to “ the knowledge or information and belief ” of the deponent, we may conclude that that general form was deemed sufficient, and that it was not intended to require the affidavit to be distributive in form so as to designate what particular statements are sworn to upon knowledge, and what upon information and belief. Plainly the statute was intended to be construed liberally as a remedy, and not strictly as a departure from the common law. The lien being valid, the plaintiffs had their right of action against the defendants. The defendants have contested the suit, as it would seem on the faith that Mr. Allen would not have made the entry of payment in his book unless such payment had been actually made. Of *917 course it is possible the payment was made, that it might have been made to some representative of the plaintiffs’ firm, who did not account to the plaintiffs for it, but there is no proof that such representatives are not entitled to the same respect for integrity that is claimed for the intestate. If the debt was really paid it is unfortunate for the defendants that the laws of evidence exclude the proofs upon which they relied, but it is clear that the law excludes proof of entries and declarations of the character of those made by the deceased. The defendants having put the plaintiffs to the expenses of the action, without the means of establishing a defense on the merits, the judgment must go against them, with costs.