### SOLOMON HERSHENSTEIN v. GEORGE H. HAHN.

Argued June Term, 1908—Decided November 9, 1908.

1. The title of the supplement of 1901 to "An act respecting any execution" (*Pamph. L.* 1901, *p.* 372), sufficiently indicates that the act is applicable to District Court executions.
2. Examinations in supplemental proceedings may be taken before Supreme Court examiners.
3. An order under the act of 1901 (*Pamph. L., p.* 372), directing a defendant to pay a certain sum weekly out of his earnings, may be made as soon as the examination in supplemental proceedings has been returned to the judge, and before the same is filed with the clerk.
4. It is not necessary that the deposition of the judgment debtor taken in supplemental proceedings be actually signed by him.
5. An order was made in supplemental proceedings requiring a judgment debtor to pay $30 monthly; he was at the time earning $150 a month; subsequently his income became reduced to not more than $16 a week—*Held*, that under the changed circumstances he should not be adjudged guilty of contempt of court for failure to obey the original order.

On *certiorari.*

Before Justice SWAYZE.

For the defendant, prosecutor in *certiorari, Melosh & Morten.*

For the plaintiff, defendant in *certiorari, Peter H. James.*

The opinion of the court was delivered by

SWAYZE, J. The prosecutor seeks to set aside the proceedings of the Second District Court of Jersey City, supplemental to execution, including an adjudication that the defendant was guilty of contempt in failing to obey an order to pay $30 a month out of his earnings to the plaintiff.

The first objection is that the act of 1901, under which the proceeding was taken, is not applicable to District Courts, because the object is not stated in the title. This court has

already held in *Spencer* v. *Morris,* 38 *Vroom* 500, that the act is applicable to District Courts.

The particular objection now raised does not appear to have been raised in that case, but I think it is without force. The title of the act of 1901 is a further supplement to an act entitled "An act respecting any execution," and I see no reason why this should not be held to be broad enough to cover executions out of District Courts. It is true the legislature has made provision for supplemental proceedings in the District Court act itself, but I do not think that is sufficient to indicate that enactments relating to that subject-matter should always be repeated in the District Court act, as well as in the Executions act.

The second point is that the order of discovery directed the prosecutor to make discovery before a Supreme Court examiner. The act of 1901 directs that the discovery shall be before a judge or a Supreme Court commissioner, and the power of a Supreme Court examiner depends upon section 228 of the Practice act. *Pamph. L.* 1903, *p.* 596. This act gives the Supreme Court examiners the same power to administer an oath or take any deposition in any action for use in any court of law as a justice of the Supreme Court, and provides that any oath or affidavit that may be taken before a Supreme Court commissioner may be taken before a Supreme Court examiner. It is argued that the first clause does not empower the Supreme Court examiners to take depositions of this character, for the reason that there is no provision by which a justice of the Supreme Court can take them. Without passing upon this question, I think that the second clause, authorizing a Supreme Court examiner to take any oath or affidavit that may be taken before a Supreme Court commissioner, is sufficient authority. Strictly and technically, an affidavit is taken *ex parte,* and a deposition is taken upon notice, so that testimony taken under an order for discovery would be called a deposition with more technical propriety. But the use of the word "affidavit" with a similar meaning is not unprecedented in our reports. A curious illustration of the interchangeable way in which the word "depositions" and "affi-

davits" may be used, appears in the old case of *Rogers* v. *Chadwick, 5 Halst.* 59. Other illustrations may be found in *Den* v. *Geiger, 4 Id.* 225; *Scott* v. *Beatly, 3 Zab.* 256 (at *p.* 260); *Warford* v. *Smith,* 1 *Dutcher* 212; *Parsell* v. *Mann,* 1 *Vroom* 530 (at *p.* 550).

The last cited case is in the Court of Errors and Appeals.

I think, therefore, that a Supreme Court examiner was authorized to take this examination.

The third point urged is that the depositions were not filed until the 8th day of May, while the order directing defendant to pay was made on the 6th day of May. It appears in the case, and is not denied, that the depositions were presented to the judge on the 4th of May, although not filed with the clerk until the 8th. It is enough to say that the statute does not require the depositions to be filed before the order is made, but only that they should be returned to the judge. A similar question was presented to the Court of Errors and Appeals in *Stokes* v. *Hardy, 42 Vroom* 549.

Nor is it an insuperable objection that the depositions were not signed by the defendant. This practice may be very convenient by way of verifying an examination of the judgment debtor, but it does not seem to be required by the statute; and, since the judgment debtor did actually sign the depositions, it does not seem material whether he signed them before or after they were presented to the judge, or after the order was made.

I see no force in the objection that there was no formal closing of the taking of testimony, since, in fact, the testimony was treated by both parties as having been closed, and no effort was made by the defendant to take testimony on his part, even if it be assumed that under an order of this kind he had a right so to do.

The fifth point raised by the prosecutor goes to the merits of the case, and involves the validity of the order made on the 4th day of March, 1908, adjudging the defendant guilty of contempt of court and ordering that a warrant issue to a constable commanding him to arrest the defendant and forthwith convey him before the judge. This probably was made after

an order of February 26th, 1908, directing the defendant to show cause why he should not be adjudged guilty of contempt for not obeying the order for the payment of the judgment made on the 4th of May, 1907. Upon the return of this rule the defendant admitted, by his counsel, that he had not complied with the order to pay, and presented an affidavit showing that his circumstances had changed, so that, instead of earning $6 a day, he was earning not more than $15 or $16 a week, and that that was not more than sufficient to supply the necessaries of life for himself, his wife and his child. In this affidavit he expressed his willingness to report to the plaintiff's attorney every week, advising him when and where he was employed, by whom, and the amount of money that he earned, in order that the court and the plaintiff's attorney might be satisfied as to his ability to comply with the requirements of the order to pay.

No facts appear to contradict the statements of this affidavit, and no question seems to be raised now as to its truth.

The order adjudging the prosecutor guilty of contempt is a very different order from that which was involved in *Doland's Case, 3 Robb.* 802, for this distinctly adjudges the defendant to be guilty of contempt, and the warrant which it orders does not seem to be in the nature of an attachment upon which interrogatories were intended to be served. I think the order amounts to adjudication of contempt, and is not a mere order for process. I do not think it necessary to consider whether the procedure adopted in this case was the proper procedure or not. If the procedure had been by way of interrogatories, and the defendant had answered them, the answers would probably have disclosed the same state of facts as are disclosed by his affidavit, and I shall therefore treat the case as if this affidavit had taken the form of answers to formal interrogatories. Treating it in that way, it seems to me that it shows such a case that he should not have been adjudged guilty of contempt. As far as the case shows, he was at the time the original order was made requiring him to pay $30 a month, earning about $150 a month; the court, therefore, seems to have thought that it was not unreasonable

for him to use $120 per month of his earning for his living expenses. When his income shrank to not more than $16 a week, his total income was a little more than half of that amount, and I see nothing to indicate that it is unreasonable for a man with a wife and child, living in Jersey City, to expend $16 a week in living expenses. The statute does not contemplate that a man should devote all of his earnings to his creditors; to require that would, in substance, make him the slave of his creditors, and require the court to enforce the servitude.

The case, so far as contempt of court is concerned, seems to me to come within the rule of *Walton* v. *Walton,* 9 *Dick. Ch. Rep.* 607, and the cases of *McClure* v. *Gulick,* 2 *Harr.* 340, and *State* v. *Gulick,* 2 *Id.* 435, therein cited.

I think the order adjudging the prosecutor guilty of contempt should be set aside. There was no suggestion that the original order directing him to pay $30 a month was improper under the circumstances then before the court, and that order should not be disturbed.

No costs should be allowed to either party as against the other.