TOWN OF CHECOTAH *et al. v.* TOWN OF EUFAULA *et al.*

No. 696.   Opinion Filed June 27, 1911.

Rehearing Denied December 19, 1911.

(119. Pac. 1014.)

1. **COUNTIES — County Seats — Location — Submission to Popular Vote.** Section 12 of article 4, c. 31, of the act entitled ''county seat locations,'' Sess. Laws 1907-08, which was passed for the purpose of providing procedure for holding of special elections for the purpose of permanently locating county seats, provides in substance that each elector desiring to vote at the election called shall, after being admitted to the election room and before being given a ballot, permit the clerks to fill out an affidavit to which he shall subscribe and swear before the special election commissioner provided for therein, after which he shall be given a ticket and be permitted to prepare and deliver the same to the said official, who shall thereupon, in the presence of said elector, deposit the same in a box provided therefor.   At an election called and held under the provisions of this act, the special election commissioner prior to the opening of the polls attached his jurat to a number of blank forms of affidavits and placed them available for the use of the clerks and the electors and continued this practice throughout the day.   On an elector entering the room, he was informed by the judges that he would be required to make an affidavit to his qualifications as an elector before he could vote.   He then gave the information required to complete the affidavit, which was accordingly done, after which he read the affidavit, or, if unable to read, the same was read and explained to him by the election judge.   Thereafter the elector signed his name thereto, or, if unable to write, touched the pen.   The affidavit was thereupon delivered to the election commissioner, for the purpose and. with the intent on the part of the elector of receiving a ticket and to prepare the same and cast it as his ballot in the election.   The special election commissioner and the clerks all understood that this process constituted a swearing on the part of the elector, and the elector intended it as such, and the affidavit was delivered with the intent that it be

taken and acted on as true. On a contest the ballots cast under these conditions are objected to, and it is sought to have them held void on the ground that the affidavit was incomplete without a formal taking of the oath, and that, being so incomplete, the elector was not entitled to receive a ballot, and that, having improperly received and cast it, the same should not be counted. **Held**, that such contention cannot be sustained, as under section 2182, Comp. Laws 1909, it is provided that ''the making of a deposition or certificate is deemed to be complete, within the provisions of this article, from the time when it is delivered by the accused to any other person with the intent that it be uttered or published as true.''

2.  **PERJURY—Elements of Offense—Sufficiency of Oath—''Deposition.''** The word ''deposition,'' as used in section 2182, Comp. Laws 1909, includes ''affidavit,'' as under section 2965, **Id.**, the statute provides that every mode of written statement under oath or affirmation is embraced by the term ''depose.''

3.  **SAME—Elements of Offense—Sufficiency of Oath—Affidavit.** The test of the sufficiency of an affidavit which is made and delivered within the terms of section 2182, Comp. Laws 1909, is whether it will sustain and authorize an indictment, not whether a conviction could be had under it.

4.  **COUNTIES—County Seat—Location—Submission to Popular Vote.** Section 12 of article 4, c. 31, of the act entitled ''county seat locations,'' Sess. Laws 1907-08, provides for the substantial form of oath which the elector must sign and to which he must swear before being given a ballot. This affidavit, in addition to setting forth the different facts evidencing that the party signing and swearing to the same is a qualified elector, provides that he shall state therein his color and his former place of residence. On the occasion of an election being held under this statute, the election officials of one precinct without fraud, and owing to the great number of electors residing therein, agreed that the time available would not permit completing the affidavits by securing from each elector his color and his former place of residence, and the electors were not by the officials asked these questions nor required to furnish this information, but signed and swore to affidavits which did not contain this information. On a contest, the ballots cast under these conditions are objected to, and it is sought to have them held void on the ground that the affidavits were incomplete and insufficient, in the absence of a statement of the omitted facts, to justify the delivery to or reception by the electors of tickets for the purpose of preparing and casting their ballots. The statute, in setting forth the form of affidavit, provides that it shall be ''substantially as follows,'' etc. It was not shown that the electors participated in making the rule adopted, nor that any refused to give the information, nor that any fraud was perpetrated or intended, nor that the parties who cast their ballots were not qualified electors, nor that the election or trial was in any particular affected by reason of the absence of the details specified. **Held**, that the ballots were not rendered invalid or

void by reason of such defect, and that the affidavit made was a substantial compliance with the statute.

(Syllabus by the Court.)

Original action by the Town of Checotah and others against the Town of Eufaula and others for writ of injunction. To the report of a referee appointed to take evidence, with his findings of fact and conclusions of law, the plaintiffs except. Report confirmed, and judgment entered accordingly.

*Owen & Stone, Ben D. Gross, John F. Vaughan,* and *Claude A. Niles,* for plaintiffs.

*William A. Collier,* for defendants.

DUNN, J. November 13, 1908, there was delivered by this court an opinion, entitled *Town of Eufaula v. Gibson et al.,* 22 Okla. 507, 98 Pac. 565, under which a second election was called in McIntosh county for the purpose of permanently locating the county seat in said county, in which Eufaula and Checotah alone would be the participants. In accordance therewith, notices were issued, and the same was duly held February 10, 1910. Thereafter the town of Checotah filed in this court an original action contesting the result of the election, and on August 9, 1910, Hon. Robert J. Ray was appointed to take the evidence therein and report the same to this court with findings of fact and conclusions of law. A hearing was duly had, and on February 14, 1911, the referee filed his report, in which Eufaula was shown to have received 1,918 votes and Checotah 1,843 votes. To this report counsel for plaintiffs filed exceptions, under which they have argued and briefed two leading propositions which raise the question of the validity of the ballots cast at Mellete and East Eufaula precincts, a decision on which, from the view which we take of the case, will determine the controversy. In order to squarely present for consideration the questions which are involved by the exceptions filed, it will be necessary to briefly review the requirements of the Constitution and the act under which the election was held.

Article 17 of the Constitution names the different counties of the state and fixes the county seats thereof. Section 6 pro-

vides that the towns named shall be and remain the county seats of their respective counties until changed by a vote of the qualified electors of the county. This proviso is thereafter followed by details setting forth the manner in which such election should be called and held. The first Legislature of the state of Oklahoma, 1907-08, passed an act amplifying and providing full procedure for carrying into effect these provisions of the Constitution. Sess. Laws 1907-08, act entitled "county seat locations," article 4, c. 31, p. 380. Section 8 of this act provides that, when an election is called for the purpose of selecting a county seat, it shall be the duty of the Governor to appoint one special election commissioner for each voting precinct or voting place in the county. Section 9 provides that no person shall be qualified and eligible to perform the duties of such special election commissioner, who was or had been a resident of such county, or who shall be interested in any manner in the success of any city, town, or place which was a candidate. Section 12 then provides as follows:

"Every person desiring to vote at such special election, after having passed the challengers whose duties shall be the same as prescribed by law governing any general election, and being admitted to the room, shall, before being given a ballot, permit the clerks to fill out an affidavit, and said intended voter shall subscribe and swear to said affidavit before the said special election commissioner, after which he shall be given a ticket and permitted to prepare same and deliver said ballot to said special election commissioner who shall, in the presence of said voter, deposit said ballot in the proper ballot box, and shall deposit the said affidavit in the box provided for that purpose. The form of the affidavit required of all persons presenting themselves to vote at such special election shall be substantially as follows:

"State of Oklahoma, county of_____ss.

"_____, of lawful age, first being duly sworn, upon his oath deposes and says: That he is a male citizen of the United States or is of Indian descent, native of the United States, is over the age of 21 years_____, white_____colored_____that he has been for one year last past a *bona fide* resident of said state, of said county six months and in_____precinct thirty (30) days next preceding this date; that he came to his present residence from_____, and

is a legally qualified elector in said precinct on this day and has not voted in said election.

"Subscribed and sworn to before me this _____ day of _____ A. D. 19____.

"_____
"Special Election Commissioner."

It is on the alleged violation of this section that counsel for plaintiff predicate their claim for a reversal of the finding of the referee, and this upon one ground that the affidavit provided for was not sworn to by the electors before the special election commissioner or any other officer prior to being given a ballot and voting in the election, and in view of the holding of this court in the case of *Incorporated Town of Westville v. Incorporated Town of Stillwell et al.*, 24 Okla. 892, 105 Pac. 664, deciding that this statute was mandatory, the ballots of the electors who voted at Mellette precinct should be rejected. The referee found in reference to this particular precinct that, before the voting began in the morning, the special election commissioner attached his jurat to a number of blank forms of the affidavits and placed them on the judges' desk to be by them filled out as the voters came in to vote, and from time to time during the day, as the affidavits were needed, he would sign them in advance in numbers of ten or fifteen so that they would always be ready and available. On the elector entering the room, he was informed by the judges that he would be required to make an affidavit showing his qualifications as an elector before he could vote. He was then asked and gave the information required to complete the affidavit, and the blanks were filled in by one of the judges in accordance with the voter's statements. The affidavit as thus made out, with the special election commissioner's signature attached, was then presented to the voter by the judge who filled it out. The elector then read it for himself, but, if unable to read, it was read or explained to him by the judge. After this the elector signed his name thereto, or, if unable to write, requested the judge to sign his name for him while he touched the pen. The affidavit was then either by the judge or elector, usually the latter, handed to the special election commis-

sioner, who received the same and placed it in a box for that purpose and then delivered to the elector his ballot. The referee then in his findings of fact specifically found that, with the exception of certain electors not necessary to here notice, every person who voted at that precinct knew and understood the contents of the affidavit, and understood that' it was an affidavit as to his qualifications as a voter for the purpose of voting, and in his conclusions of law specifically states that the elector did everything that was required of him under the law, and that he understood the contents, knew he was signing an affidavit, and signed the same in the presence of the special election commissioner and the entire election board, believing that he was signing an oath and believing that he was being sworn and in all respects complying with the law, but that the officer did not ask him to raise his hand or ask him if the statements contained in the affidavit were true, nor do anything further than receive from the voter the signed affidavit and put it in the box and deliver to the voter his ballot. That the voter did not in words ask the special· commissioner to swear him, but that, when he presented himself and signed the affidavit duly prepared, he did by fair implication ask to be sworn to the affidavit. Both parties rely upon the holding of this court in the Westville v. Stillwell case, *supra,* and each have ranged the entire domain of text and case law, to support their several contentions. The questions presented herein are far-reaching and of momentous importance, as there are a number of counties in which the location of the county seat at an election already held depends upon the conclusion to which we come in the determination of this question. In the Westville v. Stillwell case, *supra,* this court passed merely on the facts which were presented in that case, and then said:

"It is not contended that the parties did anything more than subscribe their names to the affidavits; the officers not even attaching their jurats thereto, either in the presence or absence of the affiants. It may be that, had the deponent signed the affidavit in the presence of the officer and stood by, and, with knowledge that the officer placed his jurat thereon, acquiesced in such act, that would have been sufficient; but we reserve our decision on that question."

The decision that was there reserved is now essential to be made, for the situation there suggested is, now squarely presented. The electors at this precinct attended upon the polling place for the purpose of casting their ballots. The law informed them, and they knew when they entered the election room, that it was necessary, before being given a ballot, that they permit the clerks to fill out this specific affidavit to which it was their duty to subscribe and swear before the special election commissioner prior to being given a ballot and being permitted to prepare the same. It appears from the findings of the referee that the electors at this precinct, in addition to the conclusive presumption of their knowledge of the requirements of the law, received direct information of its demands from the election officials when they were delivered the blank form of affidavit prescribed by law; that they signed their name thereto in the presence of the officials, either reading or having the same explained to them at the time; that for the purpose of procuring a ballot which they were to cast, understanding that they had been sworn to the affidavit, and the election officers joining in that understanding, they delivered the affidavit to the special election commissioner with the intent to have him act thereon and deliver to them their blank ballots, which he did, and which they, by reason of these things, were permitted to prepare and cast. With all of these conceded facts before us, we are now asked to say that every ballot which was cast by the electors under this procedure was void, and that the election held thereby must fall, notwithstanding the fact that there is a total and complete absence of any challenge of the qualification of electors who cast the same. It is claimed that because the electors did not hold up their hands and swear to the affidavits, nor ask to be sworn to them, or were not sworn to them in due form, but merely did the things which are above set out, that the affidavit was not complete, that perjury could not be predicated upon it, and that it was in fact a mere nullity. We deem it unnecessary to consider at length the numerous definitions of "oath," and the different cases holding that the due and formal administrations of the same are necessary in order to complete the requirements

of law, for, as we view it, our statute covers completely every element essential for our consideration. The special election statute requires, as we have seen, that the electors shall permit the clerk to fill out an affidavit, and that the intended voter shall subscribe and swear to the same before the special election commissioner. An "affidavit," under our statute (section 5861, Comp. Laws 1909), is defined to be "a written declaration under oath without notice to the adverse party." So that as the term is used in this act, as there is no adverse party, an affidavit may be defined simply as "a written declaration under oath," or, as the same is sometimes defined by the courts, it means an oath reduced to writing. *State v. Headrick,* 149 Mo. 396, 51 S. W. 99; *Grove & Jenkins v. Campbell et al.,* 9 Yerg. (Tenn.) 7, 10; *Burns v. Doyle,* 28 Wis. 460; *Edwards et al. v. McKay, Admx,* 73 Ill. 570.

Section 2176, Comp. Laws 1909, under article 12, c. 25, being the article on Perjury and Subornation of Perjury, provides that:

"Every person who, having taken an oath that he will testify, declare, depose or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, willfully and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury."

The term "oath" is defined (section 2177, *Id.*) as including every mode of attesting the truth of that which is stated which is authorized by law, and section 2179, *Id.,* provides that it is no defense to a prosecution for perjury that the oath was administered or taken in an irregular manner. Section 2182, *Id.,* is the section which, taken in conjunction with its context, in our judgment renders these affidavits complete, in view of the things which were done by the officials and the electors, and reads as follows:

"The making of a deposition or certificate is deemed to be complete, within the provisions of this article, from the time when it is delivered by the accused to any other person with the intent that it be uttered or published as true."

Section 2965, *Id.*, provides that "every mode of oral statement under oath or affirmation is embraced by the term 'testify,' and every written one in the term 'depose.'" So that, when a party makes a written declaration under oath, he deposes, and very many authorities have held that, the word "deposition" includes an affidavit. *State v. Dayton,* 23 N. J. Law, 49, 53 Am. Dec. 270; *People v. Robles,* 117 Cal. 681, 49 Pac. 1042; *People v. Maxwell,* 118 Cal. 50, 50 Pac. 18; *Stimpson v. Brooks,* 3 Blatchf. 456, 23 Fed. Cas. No. 13,454; *Hershenstein v. Hahn,* 77 N. J. Law, 39, 71 Atl. 105. While the Supreme Court of California, in which state there exists a statute identical with the one before us, held in the case of *People v. Robles, supra,* construing the word "deposition" used in this statute, that "the word 'deposition' as used in this statute includes 'affidavit,'" the affidavits which were made in this case met all of the requirements of the law as to being sufficient upon which to make an assignment of perjury if false. They were entitled, "affidavit." The venue was stated. There was the body containing material and relevant statements relating to the matter then in hand, in accordance with the requirements of the statute. They were signed, which signature was followed by the certificate of the notary: "Subscribed and sworn to before me this 10th day of February, 1910. Eugene Flowers, Special Election Commissioner." Such a paper supplies all the essentials of a completed affidavit. 1 Encyc. of Pleading & Practice, pp. 310, 311, and authorities cited in notes. Under these circumstances, when the facts in the case are taken into consideration, the foregoing statute (section 2182) rendered these affidavits complete without reference to whether the electors raised their hand or were duly sworn to the same, when the facts show that they were delivered by them to the election commissioner with the intent that they should be uttered or published as true for the purpose of procuring the blank ballots which were received, prepared, and cast. A further analysis and consideration of the terms of the act confirms us in this view. The word "making," according to Webster's New International Dictionary, is the "action of one that makes." "Affidavit," as we have seen, falls within the term

"deposition." The word "deem," according to Webster, is defined as "to sit in judgment over or upon," and the word "deemed," from such definition, would be construed to mean "adjudged." "Complete," according to the same authority, means, "filled up; with no part, item, or element lacking; free from deficiency; entire; perfect; consummate."

With this construction, then, placed upon the dominant elements of the section, there is no room for doubt that it was the intent of the Legislature by this act to provide that where one delivered, as shown, an affidavit or a paper containing the elements which we have referred to above, to another person with the intent that it should be uttered or published as true, that its making should be deemed or adjudged to be free from deficiency, entire, and complete, with no part, item, or element lacking. This being true, then perjury was assignable upon these affidavits from the time when they were delivered by the electors with the intent that they should be acted on as true in securing their ballots, and this, too, without reference to whether the signers were formally sworn or not. The reason for this is that the law has fixed the act of delivery of such a document by the accused to some other person with the intent referred to in the statute, as the act fixing its character. Such an act is just as fully within the control of the accused or the maker of the affidavit as the raising of the hand, and the formal taking of an oath, and the danger of misconstruction is far less likely. And in our judgment the statute was passed to meet just the contingency which has arisen in this and similar cases. The question of whether the signer was actually sworn to an affidavit which he has delivered with the intent that the same be uttered, published, and acted on as true, and under which others have acted, often arises to be established months or even years afterward. The man who will corruptly swear to a false affidavit will usually have few scruples, if overtaken in his crime, in swearing to that which is necessary to acquit himself, and the fleeting, passing formality of either raising his hand or taking the oath is of such a nature that generally officials will be unable to make positive evidence thereof after a lapse of time, while the accused will be ever ready to

avouch the fact that this solemn act was never committed or done. The question, then, in cases of this character, under this statute, is reduced to the proposition of: Was the affidavit, executed as it appears upon its face, delivered by the accused to another with the intent that it be uttered or published as true? If so, and perjury has been committed, the crime is complete when these acts are done. Of course, the defendant may establish any available defense. It may not be sufficient to effect a conviction. He may show, for instance, that he was insane, or that he signed under duress, or that he could not read, and it was misread to him, and doubtless other grounds which do not occur to us; but these facts do not affect the completeness of the affidavits where the terms of the statute are met. Nor is such a rule harsh, nor a departure from the great ordinary highway of the law. It is simply the rule of reason that men should be held to the result of their deliberate acts. Since human conduct first began its course, the maxim has been true that actions speak louder than words. It is simply in recognition of this salutary, reasonable doctrine that this statute was enacted, for we all know that by our actions, even in the absence of words, are oftentimes effected the most solemn and consequential relations in life. Nor need such a construction surprise any, nor be deemed inconsistent with the other statutes of our state. Section 6861, Comp. Laws 1909, under the criminal procedure act, provides, in reference to prosecutions for perjury, where the perjury is charged to have been committed in court, that "it shall be sufficient to show that the oath was administered by any officer of the court authorized so to do, *or that the defendant testified and gave his testimony as under oath.*" Here again it will be noted the accused is held to the result of his actions. He may never have heard or acceded to the mumble which is often indulged in on the occasion of the administration of the oath, or it may have been omitted entirely, yet when he, in the presence of the court, gave his testimony *as under oath,* this is sufficient upon which to predicate perjury, and, if he were never sworn, the substitute for it was supplied by his acts, just as in the case before us, where, if the form of administering the oath was not acted out, the sub-

Town of Checotah et al. v. Town of Eufaula et al.

stitute for it was supplied by the elector when, after having completed the affidavit before us, he delivered it to the election commissioner with the intent of having the same uttered or published as true, and acted on as true, and whereby he received from such official the ballot which he cast.

We have considered the cases of *Case v. People*, 76 N. Y. 242, *O'Reilly v. People*, 86 N. Y. 154, 40 Am. Rep. 525, and *Kane v. City of Brooklyn*, 114 N. Y. 586, 21 N. E. 1053; but in none of these does it appear there was this or a similar statute called to the attention of the court, nor was any such ever passed on or considered, the decisions in those cases being apparently confined to the theory under which the cases were tried. Our statutes, however, are controlling in any event, and the construction which we have placed hereon calls for the confirmation of the referee's report as to Mellette precinct.

It is next contended that the affidavits, as they were prepared, signed, and delivered in East Eufaula precinct, were fatally defective because they failed to state the color of the electors or their former place of residence. An inspection of the requirements of the form of the affidavit quoted above discloses that, in addition to all the elements showing that the elector was qualified to vote, he was required to state his color and his former place of residence. The statute provides that the affidavit "shall be *substantially* as follows," etc. This language imports that it is not essential that the affidavit be an exact copy of that set forth in the statute, and means that less than an exact compliance will be sufficient, provided, that the affidavit substantially, or, generally speaking, in its essential and material parts, meets the requirements. It is conceded that the affidavits in this precinct contain all of the elements set forth in the statute showing that the elector was duly qualified, and as there is no showing that this defect in the affidavits had any effect on the result of the election or the trial, and as the word "substantially" defeats the claim by counsel that they are void affidavits, the ballots cast thereunder must be deemed valid. The word "substantially" is defined in volume 7, Century Dictionary & Cyclopedia, p. 6031, as follows: "In substance; in the main; essen-

tially; by including the material or essential part." To the same effect is the holding of the courts in the following cases: *Edgerton v. State,* 70 S. W. (Tex. Cr. App.) 90; *Western Assurance Co. v. Altheimer,* 58 Ark. 565, 25 S. W. 1067; *Thomas v. State,* 103 Ind. 419, 2 N. E. 808; *Lowrie v. Meldrum Co.* (C. C.) 124 Fed. 761; *Lineberger et al. v. Tidwell et al.,* 104 N. C. 506, 513, 10 S. E. 758; *Russell v. Ralph,* 53 Wis. 328, 10 N. W. 518; *Schwartz et al. v. Allen et al.* (Super. Buff.) 7 N. Y. Supp. 5; *Stanhope et al. v. Dodge et al.,* 52 Md. 483.

The correctness and justice of this conclusion finds complete support in the specific findings of the referee in which it is disclosed that at the time of the opening of the polls it was agreed between the inspector and judges that it would take too much time to fill out the blanks with the color and former place of residence of the electors, in view of the number in that precinct, and hence and for this reason the same were not filled out; that this decision was not in the furtherance of any design on the part of any of the representatives on the part of Eufaula to conceal the identity of any voter, and that no elector refused to state these facts.

Furthermore, it is to be noted that what was done was by the election officials, not the electors, and the statute specifically provides that the elector shall "permit the clerks to fill out an affidavit and said intended voter shall subscribe and swear to said affidavit." This the electors did, and it occurs to us that it would be an act of marked injustice to disfranchise an elector and reject his ballot when he had done all that the statute required and refused to do nothing that the officers requested. He signed and swore to the affidavit which he permitted the clerks to fill out. This met his full duty, especially where the affidavit was in substantial compliance with the statute. Seldom, if ever, are electors penalized by the loss of their votes because officers are derelict, and we can see no reason for it in this case.

It therefore follows that the conclusion reached by the referee on both questions must be affirmed.

This court is duly impressed with the importance of the conclusions to which it has come in this case. Aside from it,

there are now pending contests in a number of other counties of the state between competitive communities for the county seats of their respective counties, and the determination of the issues in this case will necessarily influence to a great extent, if not completely, the decision in a number of the others. The contest in this court has been waged by able and talented counsel on the part of both parties, and nothing has been left undone that zeal and industry on their part could achieve. The case has been fully presented, and ably argued, and the conclusion that Eufaula is the permanent county seat of McIntosh county follows after full consideration of all the issues presented by counsel, and a most careful, painstaking, independent investigation on the part of the court.

The duties of the referee have been performed in an able and impartial manner, and his report is confirmed, and judgment entered accordingly.

HAYES and KANE, JJ., concur; TURNER, C. J., and WILLIAMS, J., concur in conclusion.