ALBERT RAY ET AL. *v.* RIPLEY SCHOOL TOWNSHIP ET AL.

[No. 1168A189. Filed November 24, 1970. Rehearing denied December 28, 1970. Transfer denied March 5, 1971.]

David W. Dennis, Donald D. Bussell, Dennis, Dennis, Reinke & Vertesch, of Richmond, James S. Shepard, William C. Runyon, Shepard and Runyon, of Liberty, for appellants.

George W. Hand, Scotten & Hinshaw, of New Castle, for appellees.

WHITE, J.—Appellants, plaintiffs below (hereinafter "remonstrators"), brought this action by complaint and remonstrance against the annexation of all the territory of the Ripley School Township of Rush County by the Charles A. Beard Memorial School Corporation of Henry County. A trial without jury resulted in a judgment that the annexation take place. The remonstrators' motion for a new trial was overruled and they have appealed.

As seems to be true of most school statutes in this state, those which authorize and regulate annexations of this type are extremely intricate and defiant of simple analysis. The basic statute is Ind. Acts 1963, Ch. 296, being Burns IND. STAT. ANN. (1968 Cum. Supp.) §§ 28-6201 through 28-6208. It authorizes consolidation by the annexation of all or part of the territory of one reorganized school corporation,[1] or a school corporation having a common boundary with a reorganized shool corporation, by another such school corporation. The corporation which annexes territory is the "acquiring school corporation". The corporation from which the territory is taken is the "losing school corporation". (Herein, the Charles A. Beard Memorial School Corporation is the "acquiring school corporation" and Ripley Township is the "losing school corporation".)

If there is no remonstrance, annexation is effected by a two-step administrative process consisting of:

(1)  Adoption by both corporations of "a substantially identical annexation resolution."

(2)  Publication of the resolutions in both corporations, after adoption, showing the adoption and that a right of remonstrance exists.

If there is no remonstrance the annexation takes place thirty days after publication. In this case, however, there was a remonstrance, which is a simple petition signed by a specified number of registered voters residing in the losing school corporation.[2] The statute provides that this remonstrance shall be filed (impliedly in a court of law) with a complaint stating reasons for the remonstrance, limited to the following:

(1)  There is a jurisdictional procedural defect.

---

1.  A school corporation formed pursuant to Ind. Acts 1959, Ch. 202 (Burns Ind. Stat. Ann. [1968 Cum. Supp.] §§ 28-6101—28-6131), "The School Reorganization Act of 1959."
2.  There is no provision for remonstrance at this point by persons residing in the acquiring school corporation.

(2) The annexed territory is not a compact area abutting the acquiring corporation.
(3) The benefits are outweighed by detriments.
(4) The disposition of assets, etc., is inequitable.

The first reason for remonstrance alleged in the complaint is that there is a jurisdictional procedural defect in that "defendant school corporations have not adopted substantially identical annexation resolutions", and have not given the required legal notices. This allegation was proved, appellants contend, by the fact that the resolution adopted by the acquiring corporation, appellee Charles A. Beard Memorial School Corporation (Beard), contains no provision for representation of the Ripley area on its governing board, while the resolution adopted by the losing corporation, appellee Ripley School Township (Ripley), contains the following clause:

"THAT the territory now included in Ripley School Township of Rush County shall be represented on the Governing Board of Charles A. Beard Memorial School Corporation, Henry County, Indiana, beginning on the date of annexation or as soon thereafter as permitted by law."

The pertinent portion of the statute[3] provides and requires that, to effect an annexation:

"(a) Both the acquiring and the losing school corporations shall each adopt a substantially identical annexation resolution. This resolution shall contain the following items:
"(1) A description of the annexed territory . . .
"(2) The time the annexation takes place.
"(3) Any terms and conditions facilitating education of pupils in the annexed territory, in the losing school corporation or in the acquiring school corporation. . . .
"(4) Disposition of assets and liabilities . . . allocation . . . of subsequently collected taxes . . . and the amount, if any, to be paid by the acquiring school corpo-

---

3. The statute is Ind. Acts 1963, Ch. 296, § 3. It was amended in 1969, after the trial of this case. In its amended form it appears in the 1969 supplement to Burns Ind. Stat. Ann. as § 28-6203. The statute here quoted is found in the 1968 Cumulative Supplement to Vol. 6, pt. 2 of Burns, also as § 28-6203.

ration to the losing corporation on account of property received from the latter. . . .

"(b)    After the adoption of such resolution, notice shall be given by publication in both the acquiring and the losing school corporations setting out the text of the resolution. . . ."

No mention is made in that statute concerning representation on the governing board of the acquiring corporation. The statute neither expressly prohibits nor expressly permits the inclusion in the annexation resolution of any "items" in addition to the four required items. Section 5A of the act (Burns IND. STAT. ANN. § 28-6205a), however, makes detailed provision concerning what is to be done *after* annexation about representation of the annexed territory. It provides, *inter alia,* that "within sixty days after annexation takes place the governing body of the acquiring corporation shall adopt a resolution . . . [which] shall provide representation for the annexed territory by including the annexed territory in an area from which the residents may be elected or appointed to the governing body." The taking effect of this post-annexation resolution, however, is made contingent upon the possibility of a successful remonstrance by voters in the area of the acquiring school corporation. If the remonstrance is successful the resolution is submitted to referendum by the voters in the territory of the acquiring corporation and if rejected by a majority voting thereon, "the governing body shall be established in accordance with the provisions of sections 14(a), 15(a) and 18 of Acts 1949, Ch. 226 [Burns (1968 Cum. Supp.) §§ 2-2444(a), 28-2445(a) and, 28-2448]. . . ." That 1949 Act provides the method for organizing two types of school corporations called (1) "county school corporation" and (2) "metropolitan school corporations". Sec. 14 (a) (Burns' § 28-2444) reads as follows:

"(a)    At the first meeting of the board of commissioners of such county, after the creation of such metropolitan school district as provided herein, said board of commissioners shall divide the district into three [3] board mem-

ber districts approximately equal in population. Within one [1] year following each United States decennial census said board shall readjust the boundaries of said districts if necessary to equalize the same by population."

If the post-annexation resolution adopted by the governing body of the acquiring corporation is not rejected by remonstrance and referendum, it will "provide representation for the annexed territory," which is exactly what the Ripley School Township resolution said would be done. If it is rejected, Burns § 28-2444 (a), as we have seen, requires the county commisioners to divide the total area (the present area plus the annexed area) "into three board member districts approximately equal in population".

Several conclusions are readily apparent from the foregoing analyses of the statutes: 1) The Beard resolution contains all that Burns' § 28-6203 requires and expressly authorizes. 2) If the annexation takes place, Ripley Township will "be represented on the Governing Board of Charles A. Beard Memorial School Corporation, Henry County, Indiana, beginning on the date of annexation or as soon thereafter as permitted by law," just as the Ripley Township resolution states.[4] 3) The statement in the Ripley resolution is true only because Burns § 28-6205a requires that the annexed territory have representation. 4) Nothing would have been changed if the Ripley statement as to representation had been in both resolutions or in neither. 5) No provision of identical annexation resolutions can effect any modification, alteration, or nullification of any of the provisions of Burns § 28-6205a relating to representation of annexed territory.[5]

---

4. The words of the Ripley resolution warrant no inference of any particular kind of representation. These words promise no more than that "the territory now included in Ripley . . . shall be represented on the Governing Board . . . as soon . . . as permitted by law." This promise is completely fulfilled by Burns § 28-6205a or, in the event of a successful post-annexation remonstrance, by § 28-2444(a).

5. This is not to suggest that either or both school corporations are free to put just anything into their annexation resolutions which they may care to say about representation. All we are here saying is that repre-

6) The legal effect of these two annexation resolutions is *identical*, even though their words differ.

Are these two resolutions, then, substantially identical? We hold that they are and we believe the definition of "substantially equivalent" in *Sutto* v. *Board of Medical Registration* (1962), 242 Ind. 556, 565, 180 N. E. 2d 533, 538, and the definition of "substantially the same" in *Darlington* v. *Studebaker Packard Corp.* (N. D. Ind. 1961), 191 F. Supp. 438, support that holding. In *Darlington*, the court said:

> "This Court believes that plaintiff misunderstands the word 'substantially'. It does not mean identical or 'the same'; it means less than this. 'Substantially' means ■ in substance; in the main; essentially, by including the material or essential parts, *Electric Candy Machine Co.* v. *Morris*, C.C.E.D. Mo. 1905, 156 F. 972. The word 'substantially' is a relative term and should be interpreted in accordance with context of claim in which it is used, *Moss* v. *Patterson Ballagh Corp.*, D.C. Cal. 1950, 89 F. Supp. 619.
>
> "When we say a thing is 'substantially the same' we mean it is the same in all important particulars. If the change of words does not contribute to a new result, the change is not material and we can still say the new is 'substantially the same' as the old." (191 F. Supp. at 439.)

The apparent difference one discovers upon comparing the two resolutions is wholly illusory. The change made in the Ripley resolution by adding words to it which are not in the Beard resolution is a "change . . . [which] does not contribute to a new result, [thus] the change is not material and we can still say the . . . [Ripley resolution] is 'substantially the same' as the . . . [Beard resolution]".

---

sentation is controlled by the statute and not by what the annexation resolution says.

Elsewhere in this opinion we hold that if, as here, one of the annexation resolutions contains a true statement about representation after annexation (true because the statutes so provide), such surplusage does not render the resolutions not substantially identical. We intend to imply nothing concerning any other additional matter which may be included in either or both annexing resolution.

The Charles A. Beard Memorial School Corporation and the Ripley School Township "each adopt[ed] a substantially identical annexation resolution." Remonstrators are not entitled to any relief by virtue of the allegation of their complaint that the resolutions are not substantially identical.

Although their complaint does not mention it, the remonstrators contend in their brief[6] that neither the annexing nor the acquiring school corporation is a reorganized school corporation, hence no annexation was authorized and the trial court was without jurisdiction.[7]

Remonstrators have correctly analyzed the definition of "school corporation" in section 1 of the Act, thus:

"As used in the act in question 'School Corporation[']' means:

"1.  Any school corporation *'created pursuant to* Chapter 202, Acts 1959' (the school corporation Re-organization Act), or

"2.  Any *'other* school corporation established under any *other* act,' which has common boundaries with any school corporations *'formed pursuant to'* Chapter 202 of the Acts of 1959."

Section 2 of the Act provides that *"any school corporation* may annex territory from *any other school corporation"* by resolutions, etc.

Obviously Ripley School Township is not "created pursuant

---

6.  Appellants have not challenged the statement in appellee's brief that this question was first asserted in the motion for new trial (apparently in the memorandum).

7.  Appellants contend, without supporting authority or reasoning, that because neither the acquiring nor the losing corporation is a "school corporation" within the meaning of the annexation act "the court did not have jurisdiction of the subject matter . . . [and when the evidence showed that fact] the trial court, on its own motion, should have dismissed this action". That argument is mystifying. If it were adopted, the result would be that remonstrators could judicially challenge annexation to and from eligible school corporations but could not challenge annexations to and from ineligible school corporations. It would also seem that a dismissal for want of jurisdiction would leave remonstrators without relief because the annexation would then have the status of one to which no remonstrance action had even been filed.

to Chapter 202, Acts 1959"[8] (Burns IND. STAT. ANN. [1968 Cum. Supp.] §§ 28-6101—28-6120e) and therefore is not a school corporation within the meaning of the first above quoted definition. But there is no evidence that it does not have common boundaries with a school corporation "formed pursuant to" the "Reorganization Act of 1959".

The only evidence of the status of Beard is the testimony of its superintendent of schools that it merged with other school organizations in 1956, since which time it has embraced the same geographic territory, and that its five-member board was enlarged to a seven-member board January 1, 1963. Remonstrators interpret this uncontradicted testimony as establishing that Beard was created and formed in 1956 and cannot have been created pursuant to the 1959 Act. With that conclusion we cannot agree. The witness was not asked whether Beard was reorganized under the 1959 Act, or by what legal device its five-member board was increased to seven members in 1962. There is no evidence whether Beard has a common boundary with a reorganized school corporation.[9]

Assuming, *arguendo*, that as an actual matter of fact neither Beard nor Ripley is a school corporation within the definition of the annexation act, we fail to see how that undisclosed fact can or should have affected either the trial court's decision or our decision. No one has suggested that the school corporation defendants had the burden of proving that either or both of them were eligible, as "school corporations", to effect the annexation. In the absence of evidence that they were not eligible, no one has suggested that there

8. A school township governed by a township trustee and a township advisory board cannot be a reorganized school corporation. The "School Reorganization Act of 1959" (Burns §§ 28-6107 and 28-6107a) requires a multi-member board of school trustees. The principal of the school and the township trustee also testified that the township had not been reorganized.

9. Whether we could take judicial notice of its status we do not decide for the reason that we have been furnished with no authenticated actual information on which to base such notice.

is any valid presumption that they were not eligible. The remonstrators' whole argument in this regard is that the uncontradicted evidence shows that neither Beard nor Ripley is a school corporation as defined by the annexation statute. But since we have already held that the evidence is not sufficient to sustain such a finding, the argument fails. We need not consider the consequences had there been such proof.

Remonstrators argue other contentions of error, none of which we find to be *reversible* error.

One Chalmer Back is said by remonstrators to have been an intervenor as to whom the trial court made no finding and rendered no judgment. This is said to constitute an irregularity in the proceedings by which remonstrators were prevented from having a fair trial. As so characterized, it is ground number one of the remonstrator's motion for new trial. Assuming, *arguendo*, that the trial court should have made a finding as to Chalmer Back, no showing has been made that failure to do so prevented remonstrators from having a fair trial. In *Altmeyer* v. *Norris* (1954), 124 Ind App. 470, 473, 119 N. E. 2d 31, 33, we said: "The finding of the court marks the end of the trial and, even if the finding be erroneous, it is not an error occurring during the course of the trial. . . ." Although we were there concerned with a different statutory ground for new trial,[10] the application of that reasoning to the case at bar is obvious. What might have been our ruling had the appellee school corporation moved to dismiss the appeal because the remonstrators were attempting to appeal from a judgment not final as to all parties and all issues,[11] we

10. The first ground of the motion in the case at bar is based on Burns Ind. Stat. Ann. (1968 Repl.) § 2-2401 (in effect at the time this case was tried and appealed) which makes "[i]rregularity in the proceedings . . . by which the party was prevented from having a fair trial," the first statutory ground for a new trial. In the cited case, the statutory ground was the eighth, "[e]rror of law occurring at the trial."

11. See Rule 2-3, in effect when this appeal was perfected, and Rule AP 4 (B), now in effect. Both provide: "No appeal will be dismissed as of right because the case was not finally disposed of in the court below as to all issues and parties, but upon suggestion or discovery of such a

need not speculate. But it must be obvious that an appellant cannot obtain a reversal of a judgment for the reason that it is not an appealable judgment.[12]

For the first time on appeal, appellants charge the trial court with "irregularity in the proceedings of the court in that the court did not make special findings as directed . . . by the Mandate of the Supreme Court of Indiana Rule 1-7C."[13] Even though the rule *may* have rendered it unnecessary for remonstrators to request special findings at the commencement of the trial and may even have relieved them of the burden of calling the alleged error to the attention of the trial court,[14] it did not relieve them of the burden of filing in this court "a specific assignment of the errors relied upon."[15] The only assignment of error on this appeal is that the trial court erred in overruling the motion for new trial. The motion for new trial does not mention the trial court's failure to make special findings. Error, if any, has thus been waived.[16]

Remonstrators assert that the decision is not sustained by sufficient evidence. But since the decision is a negative decision, that ground is not available.[17]

situation the appellate tribunal may, in its discretion, suspend consideration until disposition is made of such issues, or it may pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by subsequent proceedings in the court below."

12. Burns Ind. Stat. Ann. (1968 Repl.) § 2-3201 states that "[a]ppeals may be taken . . . from all final judgments. . . ." See also Rule AP 4(A).

13. The new rule to the same effect is TR 52(A) which, in pertinent part, reads: "The court shall make special findings of fact without request: . . . (2) in any review of actions of an administrative agency".

14. Remonstrators did, in fact, request a special finding by motion made over nine months after finding and judgment was first entered. That motion was sustained and the requested finding was made. They made no request that all facts be found specially.

15. Old Rule 2-6. New Rule AP 7.2(A) preserves the same requirement by making "a certified copy of the motion to correct errors . . . for all purposes the assignment of errors."

16. *Gross Income Tax Division v. Surface Combustion Corp.* (1953) 232 Ind. 100, 106, 111 N.E. 2d 50, 52; *Fair Share Organ, Inc. v. Philip Nadgeman & Sons, Inc.* (1963), 135 Ind. App. 610, 613, 193 N.E. 2d 257, 259.

17. *Hardy et al. v. Town of New Harmony et al.* (1967), 248 Ind. 350, 227 N.E.2d 689; *Metrailer et al. v. Bishop et al* (1959), 130 Ind. App. 77, 162 N.E.2d 94. The decision is negative in that it is a decision against the party who had the burden of proof.

The remonstrators fourth cause for new trial is a claim of "error occurring at the trial", under which twenty-one instances of asserted error in admitting or excluding evidence are detailed. Sixteen of these instances are mentioned in appellant's written argument. Some of these rulings may be technically incorrect. Had there been a jury it is possible that prejudicial effect could be shown, especially in the admission of some evidence, such as opinion evidence. As it is, no abuse of discretion and no prejudicial effect has been shown.[18]

As regards exclusion of evidence, the remonstrators' closest approach to a showing of error involves the sustaining of an objection to a question put to Beard's superintendent asking him whether he was aware that within the last year school children being transported in buses had been involved in fatal accidents on U.S. Highway 40. In support of this claim of error, the remonstrators' entire argument is: "One of the issues in this case is whether the benefits of annexation outweigh the detriments and it is urged that the safety of the children in going to and from school is a relevant fact in the issues of this case." The transcript discloses that after the objection was sustained the same witness was asked, and was permitted to answer, three questions concerning remonstrators' assumption that the annexation would subject the children to a greater hazard by requiring them to cross U.S. Highway 40. The sustaining of this one objection did not prevent remonstrators from fully exploring this witness's knowledge and opinion of this asserted safety hazard.

Finding no reversible error in the record, the judgment of the trial court is, in all things,

Affirmed.

Hoffman, P.J. and Pfaff, J., concur.

Sharp, J., dissents with opinion.

---

18. *Patrons of the Noble County School Corporation v. School City of Kendallville* (1964), 244 Ind. 675, 680, 194 N.E. 2d 718.

DISSENTING OPINION

SHARP, J.—My disagreement with the majority centers around the meaning of "substantially identical annexation resolution" within the meaning of Acts 1963, ch. 296, § 3, as found in Burns' Indiana Statutes Annotated, § 28-6203 (1968 Cum. Supp.).

Apparently there are no Indiana cases which directly interpret the words "substantially identical". However, in *Sutto* v. *Board of Medical Registration and Examination*, 242 Ind. 556, 565, 180 N. E. 2d 533 (1962), a majority of our Supreme Court, speaking through Judge Bobbitt, stated:

> "We have been furnished no authority defining the phrase 'substantially equivalent', nor have we been able to find any by our independent research. We shall then consider the two words of the phrase independently of each other.
>
> "Substantially a true copy" was defined by this court in Thomas v. State (1885), 103 Ind. 419, 426, 2 N. E. 808, 812, as not a full and exact copy, but rather of the material and essential parts or an abstract of them.
>
> "Substantially" has also been defined as something which meets the requirements in its essential and material parts; Town of Chicotah v. Town of Eufaula (1911), 31 Okl. 85, 96, 119 Pac. 1014, 1019; Vannest v. Murphy (1907), 135 Iowa 123, 127, 112 N. W. 236, 238; and as "material," "basic," and "essential." Roget's Thesaurus in Dictionary Form (Mawson).
>
> "Equivalent" means "equal" or "identical" of equal value, force, import and effect. Salt Lake County v. Utah Copper Co. (1937), 10 Cir., 93 F. 2d 127, 132.
>
> In our judgment the Legislature, when it used the phrase "substantially equivalent" in the context of the Chiropractic Act of Indiana meant that which is equal in value in essential and material requirements."

In *Darlington* v. *Studebaker-Packard Corp.*, 191 F. Supp. 438, 439 (N. D. Ind. 1961), the court stated:

> "When we say a thing is substantially the same we mean it is the same in all important particulars. If the change of words does not contribute to a new result, the change

is not material and we can still say the new is 'substantially the same' as the old."

The definitions in both of the above cases are adequate and relevant to the construction of the statute here in question.

It is correct that the resolution adopted by the losing and gaining school corporaions in this case were substantially identical to the extent that each of them covered the items listed in Acts 1963, ch. 296, § 3. However the resolution adopted by the losing corporation, Appellee Ripley School Township, contained an additional provision with reference to the representation on the governing board of the newly created school corporations. The subject matter of this additional provision was totally absent from the resolution of the acquiring corporation, Appellee Charles A. Beard Memorial School Corporation. Obviously, the provision with reference to representation contained in the Ripley School Township resolution was of vital importance to the taxpayers of that unit. It may be presumed that such provision was not inserted in the resolution idly but was inserted in it for a purpose. The purpose, rather obviously, was to persuade the voters of Ripley School Township to support the proposed annexation. As I read the majority opinion there is a strong inference that if the items as outlined in Acts 1963, ch. 296, § 3, are covered in the resolution and if the two resolutions are substantially identical on these points, then any additional matter contained in the resolution need not be substantially identical. If this is the case, I fear that the majority opinion is an open invitation for the placing of extraneous and misleading statements in such resolutions. Under the procedure involved in the present context the provisions with reference to representation in the resolution of Ripley School Township may well be misleading in that it implies that representation will be accorded as a matter of law to the extent "the *territory . . . shall be represented on* the governing board. . . ." Following the remonstrance suit, or assuming that there is none filed, the annexation becomes effective. At this point Acts 1963,

ch. 296, § 5A, as added by Acts 1965, ch. 439, § 1, p. 1396, and found as Burns' Ind. Stat. Anno. § 28-6205(a) (1968 Cum. Supp.) governs the selection of the governing body. As I understand that statute, the only protection providing for the representation of the annexed area is found in number 5 of the limitations, which reads as follows:

> "(5)  The plan shall provide representation for the annexed territory by including the annexed territory in an area from which the residents may be elected or appointed to the governing body.

*Under the above section of the statute the annexed territory could merely be added as an appendage to a larger representative district from the acquiring corporation. This would be in considerable distinction from the kind of representation that is clearly implied and intended by the provision of the Ripley School Township resolution.*

At that point there appears to be no remedy for the people of the annexed area from such a resolution. A remonstrance against this tacking the losing area onto a larger representative district is available *only* to the residents of the *acquiring* school corporation area, as the majority opinion acknowledges. See Burns' Ind. Stat. Anno. § 28-6205(b)-(d). It appears highly unlikely a remonstrance will be initiated by those people who keep total control of the enlarged school corporation by the annexation. Assuming no remonstrance, Appellants are not then within the protection of Acts 1949, Ch. 226, §§ 14(a), 15(a) & 18, found as Burns Ind. Stat. Ann. §§ 28-2444(a), 28-2445(a) and 28-2448. Those sections refer to new corporations and are only interposed as standards when a remonstrance is successful and the resolution concerning the annexation representation is defeated by the eligible voters of the acquiring corporation. See Burns' Ind. Stat. Anno. § 28-6205(d). Again, this is unlikely, and in no way provides legal protection for adequate representation on the school board of trustees to the people of the *losing* area. Thus, I believe that the resolutions in question are not substantially

identical and may be misleading. In footnote 5 of the majority opinion the majority holds a true statement contained in one resolution but not the other does not make the resolutions not substantially identical because such resolutions cannot have any legal effect upon the representation. This is the exact problem: since the resolution has no effect on actual representation, it ought to be exactly true and leave no room for different interpretations. I believe the Ripley resolution may well hold out the promise of a representative *from the losing district being on the acquiring board of school trustees without question.* This is not true, as shown above, because Burns' Indiana Statutes Annotated § 28-6205 (a) only guarantees the losing corporate area be included in an area from which a representative is chosen. As such, it is not a true statement and the surplusage then becomes a misleading inducement, a false promise. While as the majority opinion correctly states, the *legal effect* is the same for both resolutions, they are not then by logic legally "substantially identical" within the meaning of the governing statute. The essential and material points are open to diverse interpretations. I do not believe that we should put our judicial seal of approval upon the procedure which is followed in this case in order to effectuate a purported annexation.

NOTE.—Reported in 263 N. E. 2d 737.