HERBERT WALKER AND PIERRE BLACK, PROSECUTORS, v. THE BOARD OF CHOSEN FREEHOLDERS OF ESSEX COUNTY ET AL.

Argued January 27, 1912—Decided February 20, 1912.

1. The act commonly known as the "Strong act" (*Pamph. L.* 1902, p. 65), enabling counties upon its acceptance by a referendum vote to reorganize their boards of freeholders. was not repealed by the provisions of the Civil Service act (*Pamph. L.* 1908, p. 235), either expressly or by implication.
2. The two enactments were designed to formulate and establish in counties accepting them two distinct governmental public policies for the better efficiency, economy and business-like administration of the public service, and are not inconsistent with each other.

3. The prosecutors, being clerks in the county employment, and not officers with a fixed statutory tenure, are protected in their employment from removal by the provisions of the Civil Service act and hold their employment subject to its provisions.

On *certiorari.* Two writs of *certiorari* removing resolutions of the Essex county board of freeholders, removing prosecutors from their employment.

Before Justices TRENCHARD, MINTURN and KALISCH.

For the prosecutors, *Munn & Church, Frank H. Sommer* and *Theodore D. Gottlieb.*

For the defendants, *Benjamin F. Jones.*

The opinion of the court was delivered by

MINTURN, J. The legislature in 1902 passed an act enabling counties upon accepting it by a referendum vote to reorganize their boards of freeholders. This act, commonly known as the "Strong Act" (*Pamph. L.* 1902, *p.* 65), was amended at various intervals, and finally amended in 1909, when Essex county, upon a referendum vote, taken on November 7th, 1910, accepted it, and it thereby became operative in that county on January 1st, 1912.

The title of the original act was enlarged in 1909 so as to enable the board of freeholders to make appointments and to fix the "terms of office of officers appointed by such boards." By its sixth section it terminates the terms of officers holding office, excepting certain specified appointees under appointment by the previous board, and prescribes a term of one year for all appointees of the new board.

The Civil Service act (*Pamph. L.* 1908, *p.* 235) was adopted also by the electorate of Essex county at the same election, and went into effect immediately. That act embodies a public policy of civil administration based upon qualifications of merit and fitness for state, county and municipal employment, and was held by the Court of Errors and Appeals to

be applicable to the state service upon its enactment and approval. *Attorney-General* v. *McGuinness,* 49 *Vroom* 346. It became operative in the county upon its acceptance by the people on the referendum vote. *Attorney-General* v. *McGuinness, supra; In re Cleveland,* 23 *Vroom* 188.

In this legal environment, the new board of freeholders of Essex county thus created, removed the two prosecutors, Walker and Black, from their employment in the county service, the one a bookkeeper and the other a clerk. This action was based upon the contention, now pressed upon the attention of this court, that the Strong act enables the new board to remove all appointees of the old board, declare vacancies generally, except in a few specified instances, and makes appointments to all offices and positions thus vacated for the statutory term of one year.

It would be futile to insist that the Civil Service act, passed in 1908, was repealed by the provisions of the Strong act passed in 1902; but it is insisted, *per contra,* that the Civil Service act neither expressly nor by implication repeals the provisions of the Strong act. That it does not repeal it in express terms may be conceded. In counties where the Civil Service act has not been adopted this question could not arise, for there the Strong act in all its efficacy would alone be applicable. But, in Essex county, where the legislature has enabled its electors to adopt both of these enactments·at the same election, the solution of this inquiry becomes a question of ascertaining the legislative intent.

The rule is fundamental that repeals by implication are not favored, and courts will never so construe laws if by reasonable construction the entire product of the legislative will may stand. *Hotel Reg. Realty Co.* v. *Stafford,* 41 *Vroom* 528.

These enactments must be considered not as isolated and disconnected chapters in the conception of an author. They are *in pari materia,* and must be read together, as chapters proceeding from the legislative mind indicative each in its own sphere of a legislative public policy for the administration of county affairs. It is not to be assumed that the legislature intended an absurdity, or that absurd consequences shall flow

from its enactments. *Oates* v. *National Bank,* 100 *U. S.* 239; *State* v. *Clark,* 5 *Dutcher* 96.

And yet, if we are to construe these enactments so as to sustain the action of this board, we must assume that the legislature held out to the voters of Essex county for public acceptance at an election involving a large expenditure of public funds, two enactments. one of which, when thus adopted *eo instanti,* repealed the other.

We perceive no inconsistency in these enactments. They both register the legislative will upon two distinct questions of public policy in the regulation of state, county and local government. The one has for its prime object, as its original title indicates, the reduction of county representation in the boards of freeholders of the state, thus making at once for economy and efficiency of administration, with the question of appointments to employment under the supervision of such boards as a subsidiary and incidental motive. The other enactment represents the result which we must judicially notice, of a pressing public demand in nation and state, for the abolition of a system of public employment based upon strategem and spoils, and the substitution therefor, *pro bono publico,* of a system of employment based upon business-like methods of merit and fitness.

The inconsistency between two such acts is not apparent. They both fit into the legislative scheme of economy, efficiency and fitness.

If these prosecutors are to remain in the county employment, it will be because the civil service policy of the state, accepted by the county, has stamped the *imprimatur* of fitness and efficiency upon them. If they are to be rejected under these resolutions of the board, it can only be because the vote of the people and the declared public policy of the state are to be set at naught by the provisions of an act passed six years prior to this legislative declaration in the interest of the public service.

It is to be observed that a repealing clause in the Strong act, or in any of its supplements or amendments, can be held to apply only retrospectively and repeals only legislation in

existence at the time of the passage of the original act. *Farrell* v. *State*, 25 *Vroom* 421. If this rule be applied to the provisions of the Civil Service act, it may well be contended that there is contained in its second section ample evidence of a specific legislative intent to repeal anything inconsistent with the effective operation of the public policy therein declared.

This construction of these legislative measures leads us to conclude that the prosecutors are not occupying an office for a term with a fixed statutory tenure, and, as such, excluded from the operation of the Civil Service act (*McKenzie* v. *Elliott*, 48 *Vroom* 43), but, on the contrary, that they are clerks or employes of the board of freeholders, and so, within the specific language, and the plain intent of that act, are protected from removal from their employment for any cause other than those causes prescribed by the terms of the Civil Service act and in the manner therein provided.

The resolutions in question will therefore be set aside.